[Civil No. 1332.   Filed May 6, 1914.]

[140 Pac. 490.]

ARIZONA MINE SUPPLY COMPANY, a Corporation (ARIZONA LEAD & ZINC COMPANY, a Corporation), Appellant, v. CHARLES H. BOLMAN, JAMES H. SLACK, ANNA K. STOOPS and MARION C. BEHN, Appellees.

1. QUIETING TITLE—SUBJECT MATTER—MINING MACHINERY.—Plaintiffs gave an option on a mine providing for payment of the price in installments, that the purchaser should have possession, and, on default in any payment, should forfeit, as liquidated damages, any machinery and improvements placed on the premises. Default was made after placing mining machinery, firmly affixed to the ground, on the premises, and plaintiffs took possession. *Held,* that plaintiffs could sue under Civil Code of 1901, paragraph 4104, authorizing an action to quiet title to real property, to quiet that title to the machinery against persons claiming it under a chattel mortgage or conditional sale.

2. QUIETING TITLE—SUFFICIENCY OF COMPLAINT—ALLEGATIONS AS TO TITLE.—Under Civil Code of 1901, paragraph 4105, requiring the complaint, in an action to quiet title, to set forth the nature and extent of plaintiffs' estate, allegations that plaintiffs were the owners of a mine, that the machinery in question was placed thereon to operate the mine, that plaintiffs acquired it by a forfeiture of the option under which operating machinery placed at

the mine became liquidated damages with the acquiescence of the purchaser sufficiently alleged the nature and extent of plaintiffs' property; and plaintiffs' title was not an issue unless defendant, who sold the machinery to the holder of the option under a contract of conditional sale and claimed a balance thereon, denied the purpose for which it was placed at the mine or that it was to remain part and parcel of the mine.

3. QUIETING TITLE—SUFFICIENCY OF COMPLAINT—ALLEGATIONS AS TO CLOUD OR ADVERSE CLAIM.—Under Civil Code of 1901, paragraph 4105, requiring plaintiff, in a suit to quiet title, to set forth that he is credibly informed and believes the defendant makes some claims adverse to his own, and in view of paragraph 2702 providing that contracts for the conditional sale of personal property, with reservation of title in the vendor, shall be invalid except as to the parties and persons having notice thereof, unless in writing, and the same or a copy thereof is filed in the office of the county recorder where the property is situated, allegations, in a suit to quiet title to mining machinery, that plaintiff had acquired title thereto by forfeiture of the lease for default of rental payments, but that the conditional seller had duly recorded the contract, was sufficient to show the apparent validity of the instrument constituting the cloud.

4. PLEADING—DEMURRER—ADMISSION OF TRUTH.—In an action to quiet title to mining machinery, plaintiffs' allegation that the recorded contract of conditional sale under which defendant claimed was invalid in that there was no balance due thereon, and that it was an attempt to defeat plaintiffs' rights, would be treated as true for the purpose of a demurrer.

5. QUIETING TITLE—DECREE—SUFFICIENCY OF EVIDENCE.—In an action to quiet title to mining machinery placed on mining land owned by plaintiffs, and on which they had given an option to purchase, providing for the forfeiture of any machinery placed thereon by the purchaser on default of payment on any installment of the price, where defendant, who sold such machinery to the purchaser, claimed a lien thereon for an alleged balance under its recorded contract of conditional sale, evidence *held* insufficient to sustain a decree for plaintiff.

[As to suits to quiet title, see notes in 67 Am. Dec. 110; 45 Am. St. Rep. 373.]

APPEAL from a judgment of the Superior Court of the County of Yavapai. Carl G. Krook, Judge. Affirmed. Reversed and dismissed.

The facts are stated in the opinion.

Messrs. Norris & Mitchell, for Appellant.

Mr. E. S. Clark, Mr. J. Ralph Tascher and Mr. Neil C. Clark, for Appellees.

CUNNINGHAM, J.—Defendant Arizona Lead & Zinc Company, under an optional contract with plaintiffs, acquired possession of plaintiffs' U. S. Navy and Baltimore mining claims, with the granted privilege of operating the mines during the life of their option, viz., from September 23, 1911, to December 23, 1912, unless the right and privilege expired at an earlier date by reason of said defendant's default in making the certain payments of the purchase price agreed upon, at the dates agreed upon. The said defendant agreed to place upon the mines machinery and improvements sufficient to operate the same, and, in the event it should fail to make any payments agreed to be made, the machinery and improvements so placed by it upon the mines it was agreed should become the property of plaintiffs as liquidated damages. This optional contract was not recorded. While the said Lead & Zinc Company was occupying the mines under the said contract, on or about December 1, 1911, the defendant Arizona Mine Supply Company entered into a contract with the said Lead & Zinc Company to sell to it certain machinery to be placed upon the mines and used in the operation thereof, conditioned that the title to the same should remain in the Mine Supply Company until the purchase price should be fully paid, and, if not paid, the Mine Supply Company reserved the right to retake the property. This contract of conditional sale was duly recorded on March 12, 1912. The purpose of the action is to cancel this contract of conditional sale as a cloud upon plaintiffs' title. Defendants demurred to the complaint filed upon the grounds that the complaint fails to show equity, and upon the grounds that the facts stated are insufficient to constitute a cause of action. The demurrers were overruled, and appellant Mine Supply Company assigns the order overruling the demurrers as error.

Omitting the formal averments and those parts of the complaint not deemed material, the complaint is as follows:

"That on the twenty-third day of September, 1911, the plaintiffs were, and at all times since have been, and are now

the owners of record and in fact of those certain lode mining claims situate in Copper Basin mining district, Yavapai county, to wit, U. S. Navy . . . and Baltimore. . . . That on the twenty-third day of September, A. D. 1913, the plaintiffs and defendant Arizona Lead & Zinc Company entered into a certain contract or agreement, in words and figures following, to wit: ' . . . Witnesseth: That the parties of the first part, for and in consideration of the sum of one dollar to them in hand paid by the party of the second part, . . . and the further sums to be paid as hereinafter mentioned, have this day given and granted, and by these presents do give and grant unto the party of the second part exclusive right and option of purchasing from the parties of the first part all their right, title and interest of, in and to the following described mining claims, said mining claims being situate in the Copper Basin mining district, Yavapai county, Arizona, to wit [describing the said claims]. Said option and right to purchase is given upon the following terms and conditions, to wit: (1) The option is given until December 23d, 1912. (2) The total price to be paid is $15,000.00. (3) Said $15,000.00 is to be paid as follows: 5,000 on or before December 23d, A. D. 1911; 5,000 on or before June 24th, A. D. 1912; 5,000 on or before December 23d, A. D. 1912. . . . (4) Immediate possession of said mines is to be given to second party, and it shall have the right to mine and extract ore and dispose of the same providing said work is done in a good and workmanlike manner. (5) Second party agrees to place upon said mines machinery and improvements sufficient to operate the same, and further agrees not to dispose of said machinery and improvements, or to remove the same from said mines without the written consent of first parties; and it is expressly understood and agreed between the parties hereto that, in the event that any payment be not made as herein provided, then, in that event, all buildings, machinery and improvements of whatever kind or nature so placed upon said mines shall revert to and become the property of first parties as liquidated damages for the failure to make said payments as agreed.' Provision is made for placing deeds in escrow to be delivered to second party in case the payments are made as agreed, and, in case the payments are not made as agreed, the deeds shall be returned to first parties. Instructions are included as to the

manner of passing the money paid to the escrow holder, to the persons named, and the proportions to be credited to each such named persons. That under and by virtue of said contract the said defendant entered upon said mining claims and extracted ores and minerals therefrom, and in the prosecution of said work said defendant on or about December 1, 1911, placed upon said mining claims, and firmly affixed to the same, so as to become a part of the realty, the following improvements and machinery, to wit [describing the articles].

"(5) That on the twenty-third day of March, 1912, the defendant Arizona Lead & Zinc Company defaulted in the payment of $5,000 then payable to plaintiffs under said contract, and therefore said contract became and was forfeited and was so declared by the parties thereto, and the deed in escrow was withdrawn by plaintiffs, and all of the machinery and improvements placed upon said mining claims by said Arizona Lead & Zinc Company, as hereinbefore set forth, became and were, and still are, the property of plaintiffs as against said Arizona Lead & Zinc Company, as it had theretofore and since being placed on said claims been their property as against all others; and plaintiffs took possession thereof.

"(6) That on the twelfth day of March, 1912, the defendant Arizona Mine Supply Company filed in the office of the county recorder of Yavapai county a pretended chattel mortgage upon, or conditional bill of sale of, the property mentioned in paragraph 4 hereof, which said chattel mortgage or conditional bill of sale was dated December 1, 1911, and purported to have been accepted by said Arizona Lead & Zinc Company, on the fifth day of December, 1911, an abstract of which said instrument is of record in Book 5 of chattel mortgages, at page 102, Records of Yavapai county, Arizona, which said instrument is hereby referred to and made a part hereof. The plaintiffs had no notice or knowledge whatsoever of said pretended chattel mortgage or conditional bill of sale until the filing of same for record as herein stated.

"(7) That plaintiffs are informed and believe that the defendants are asserting title to said property described in paragraph 4 hereof, by virtue of said pretended chattel mortgage or conditional bill of sale, and are threatening and intend to take said property forcibly or surreptitiously from plaintiffs' possession, and will do so unless restrained by an order of this

court. That said pretended chattel mortgage or conditional bill of sale constitutes a cloud on plaintiffs' title to said property and interferes with their enjoyment, use, and disposition thereof, to their great damage and injury, for which they are without adequate or speedy remedy at law.

"(8) That as plaintiffs are informed and believe, and so state the fact to be, the defendant Arizona Mine Supply Company has been fully paid and satisfied for each and every article mentioned in paragraph 4 hereof, and has no claim upon the same or against the defendant Arizona Lead & Zinc Company, but that said defendants, in wrongful collusion for the purpose of harassing and annoying the plaintiffs and for the purpose of wrongfully compelling them to give up said property to defendants, persist in the pretension that said alleged chattel mortgage or conditional bill of sale gives said Arizona Mine Supply Company a better right to said property than that of plaintiffs. And plaintiffs are further informed and believe, and so state the fact to be, that, in case the said Arizona Mine Supply Company should recover any of the said property forcibly or surreptitiously, it will, pursuant to said collusion with the defendant Arizona Lead & Zinc Company, deliver the same or the proceeds thereof, wholly or in part, to said Arizona Lead & Zinc Company, whereby the latter corporation will be aided in avoiding its said contract with plaintiffs."

Paragraph 4104, Revised Statutes of Arizona of 1901, provides: "An action to determine and quiet the title to real property may be brought by any one having, or claiming, an interest therein, whether in or out of possession of the same, against any person or corporation, or, . . . when such person, corporation . . . claims any estate or interest, adverse to the party bringing the suit, in or to the real estate, the title to which is to be determined or quieted by the action brought. . . ."

Paragraph 4105, Id.: "The complaint therefore must be under oath, setting forth the nature and extent of his estate and describing the premises, and that he is credibly informed and believes the defendant makes some claims adverse to the complaint, and praying for the establishment of the complainant's estate, and that the defendant be barred and forever

estopped from having or claiming any right or title to the premises adverse to the complainant.''

The jurisdiction in actions to quiet title or remove cloud is generally held to be confined to land, including the surface of the ground and everything that is on it and under it, and not to extend to personal property.    32 Cyc. 1308c.

Plaintiffs allege in the fourth paragraph of their complaint that the articles described and placed upon the lands were firmly affixed to the same, so as to become a part of the realty. In the fifth paragraph of the complaint they allege that all of the machinery and improvements placed upon said mining claims by said Arizona Lead & Zinc Company became and were and still are the property of plaintiffs, as against said Arizona Lead & Zinc Company, by reason of said Lead & Zinc Company's failure to make a payment of any installment of the purchase price as agreed, and, under a stipulation in the contract of purchase, said Lead & Zinc Company agreed to forfeit such machinery to plaintiffs as liquidated damages in the event of its failure to make any payments agreed to be made, and that it had joined with the plaintiffs in declaring the said contract forfeited and plaintiffs took possession of the property.    The purpose of placing the machinery in question on the mines was to use it in operating the mines.    The plaintiffs in the manner stated having acquired such property, and such property being on the lands, and intended to be used and suitable for use in connection with the operation of the mines, it would pass under a conveyance of the mines by plaintiffs as appurtenant thereto, unless reserved in such conveyance.    In that sense the subject matter dealt with in the complaint may be regarded as real estate.

''In an action to remove a cloud from title, the real controversy is as to that which creates the cloud, and not the title of plaintiff, unless the latter is put in issue by the pleadings.'' 32 Cyc. 1365 (II).

The general allegations that the plaintiffs are the owners of the mines, that the property in question was placed upon the mines for the purpose of operating the mines, and plaintiffs acquired the same by reason of a forfeiture of the contract under which the property was placed on the mines as liquidated damages with the acquiescence of the Lead & Zinc Company, and that they are in possession of the said property

sufficiently meets the requirements of paragraph 4105, Revised Statutes of Arizona of 1901, in regard to the allegations of the nature and extent of their estate in the property in this kind of an action seeking to remove a cloud; the title of the plaintiffs, in the meaning of the rule, is not put in issue under the facts alleged here, unless the defendants deny the purpose for which the machinery was placed upon the mines, and its use in connection with the operation of the mines, with a denial of other facts from which plaintiffs' intention may be inferred that the property is to remain a part and parcel of the mines.

"In a suit to remove a cloud on title, it must be shown in the bill that such cloud exists before relief can be given against it, and in such case the bill must, in addition to specifying the writing or matter which constitutes the alleged cloud, state facts which give it apparent validity, as well as those which show its invalidity." 32 Cyc. 1353.

Under our statute this requirement of equity pleading is met by alleging "that he (plaintiff) is credibly informed and believes the defendant makes some claims adverse to the complaint, and praying for the establishment of the complainant's estate, and that the defendant be barred and forever estopped from having or claiming any right or title to the premises adverse to the complainant." Paragraph 4105, Ariz. Rev. Stats. 1901.

Plaintiffs did not rely upon the general statutory allegation in this respect as was their privilege, but, as appears in paragraph 4 of the complaint above set forth, the adverse claim of the defendant Mine Supply Company is set forth in detail. As to plaintiffs without actual or constructive notice, such instrument, as referred to, would be invalid at all times and for all purposes. Paragraph 2702, Revised Statutes of Arizona of 1901, provides that: "No contract for the sale of personal property by the terms of which the title is to remain in the vendor and the possession thereof in the vendee until the purchase price is paid or other conditions of sale complied with, shall be valid as against any other person than the parties thereto and those having notice thereof, unless such contract of sale . . . is in writing, subscribed by the parties thereto, and the same, or a copy thereof, filed and recorded in the office of the county recorder where said property is

situated . . . in the same manner as chattel mortgages are by law required to be filed and recorded.''

This instrument being placed of record, it becomes apparently valid as to plaintiffs, and the allegations of the complaint setting forth the fact of the recording of the instrument is a satisfaction of the requirement of a statement of the apparent validity of the instrument which constitutes the cloud. The plaintiffs show the invalidity of the instrument in paragraphs 7 and 8 of the complaint set out above.

The requirement of the statute relating to the statement of the adverse claim is sufficiently complied with by the allegation of such facts; and, for the purposes of this demurrer, we must treat them as true; therefore the recorded contract must be considered invalid for the purposes of this demurrer.

The facts stated in the complaint *prima facie* entitle the plaintiffs to the relief sought, viz., a cancellation of the recorded instrument and an order restraining defendants from removing the property from plaintiffs' mines. The court committed no error in overruling the demurrers.

The defendant Mine Supply Company answered, denying that the machinery and improvements were so annexed to the mines as to become realty thereby, denied that plaintiffs acquired title to the said property by reason of the defendant Lead & Zinc Company's default in making the payment alleged, and a consequent declaration and forfeiture of the contract, and alleges that such always belonged to this defendant and subject to the conditions of the contract referred to in the complaint, but does not deny that the property was designed to be used in the operation of the mines, or that plaintiffs intended that it should remain on the mines for that purpose. It admits that the contract was recorded as alleged in the complaint, and alleges that by the provisions of which contract the parties thereto agreed that the title of the property described therein and delivered was to and did remain in this defendant until the full purchase price was paid, ''that the contract price of the property was not paid, and the title thereof still remains in this defendant and is now and ever since has been in this defendant,'' admits that it asserts title to and claims the ownership of said property by reason of the said recorded contract, and the failure of payment of the purchase price, denies all collusion and all agreements,

contracts or understandings with defendant Lead & Zinc Company, as alleged in the complaint, whereby it should surreptitiously or otherwise take possession of said property except as agreed in said recorded contract, viz., that, in case payment of the purchase price was not made, this defendant should have the right to at any time retake the property for the nonpayment of the purchase price.  The said defendant raised no issue of the plaintiffs' intention to give to the property involved the machinery and improvements used in the operation of the mines, the character of realty after they acquired the Lead & Zinc Company's title, and therefore the manner and degree of the annexation of the property, so far as defendant's rights to remove the same were not involved.  As a right to have defendant's recorded claim of title canceled is made to depend upon the validity of defendant's claim, the degree of annexation to the realty became an immaterial matter.  Plaintiffs' intentions to make the machinery and improvements permanent fixtures for the use of the mines was made to depend upon their title thereto acquired from the Lead & Zinc Company, and no issue was made on that question by the answer.  The validity of defendant Mine Supply Company's claim is made the vital and controlling issue by the pleadings, and made to depend upon whether the purchase price of the property has been paid and the contract obligation thereby satisfied.  If such fact is shown, then defendant Mine Supply Company has no valid enforceable claim to the property; if not, then it has a valid and subsisting claim prior to that of plaintiffs.  A solution of that question is decisive of the controversy, and a solution depends upon the evidence produced.

The judgment is for the plaintiffs, establishing their title and canceling the recorded instrument as a cloud on the title, with the usual restraining order against defendants.

Defendant Mine Supply Company appeals from the judgment and, among others, assigns as error that "the decree entered by the court is contrary to law for the reason . . . that it is not supported by the evidence." The sufficiency of the evidence to support the decree rendered is variously assigned, but amounts in effect to the one assignment and will be so considered.  The only evidence bearing upon the matter

at issue, which we deem necessary to notice, is the evidence of plaintiffs' title they acquired from Arizona Lead & Zinc Company and the evidence bearing upon the validity of the instrument alleged to constitute the cloud on that title.    All other matters in evidence have little, if any, bearing upon the question involved.

In support of their allegations of title, plaintiffs introduced their contract with the Arizona Lead & Zinc Company, which was set out in full in the pleadings, but not of record.    They introduced the oral evidence by one of the plaintiffs that the payment due on December 23, 1911, was not paid in full, but that on December 18, 1911, the Lead & Zinc Company, through its general manager, paid $2,500 of the $5,000 due on the twenty-third of December, 1911, as a consideration for an extension of ninety days' time for the payment of the balance which was to be payable on March 23, 1912.    That the extension of time was granted, and another contract was drawn between the parties modifying the original contract, but such contract was not produced.    That on March 23, 1912, the date when the balance, $2,500, of the December 23, 1911, payment became due, it was not made and has never been made.    A request for an extension of the contract for a year without payments was made, and the request was refused.    "During the time the agreement was in force between the twenty-third day of September, 1911, and the twenty-third day of March, 1912, Mr. Meese, acting for the Arizona Lead & Zinc Company, put certain property or improvements upon the mines." "Since the twenty-third day of March, 1912, neither Mr. Meese nor any other officer of the Arizona Lead & Zinc Company has been on the ground that I know of."    There is no evidence in the record tending to prove that the optional contract was ever declared forfeited, by the plaintiffs.    There is no evidence in the record tending to prove the plaintiffs ever notified the Arizona Lead & Zinc Company that they claimed a forfeiture of the contract of optional sale or the property placed upon the mines under that contract, or that said defendant acquiesced in such matters.    Such acquiescence may be inferred from the request of the Lead & Zinc Company for an extension of time of payment perhaps, but it would not be concluded thereby.    It is concluded, however, by its default in this action.

The plaintiffs introduced in evidence the contract between the Mine Supply Company and the Lead & Zinc Company, the instrument alleged to constitute the cloud. It bears date and record as alleged in the complaint, and is as follows, omitting the date and filing:

"This proposal is for acceptance within thirty days from date, or the price of machinery or merchandise specified herein shall be subject to revision. When this proposal is accepted it constitutes a contract. Delivery of material covered by this contract, is subject to delays occasioned by accidents, strikes, fires, delays in transit and causes beyond the control of Arizona Mine Supply Company. The title and right of possession to articles herein mentioned shall remain in Arizona Mine Supply Company until agreed price is fully paid. Terms of payment: One hundred ($100) dollars cash. Balance sixty (60) days from date."

"To Arizona Lead & Zinc Company, Skull Valley, Ariz.

"We are pleased to quote you on the following articles delivered f. o. b. cars, Prescott, Arizona [articles described].

"Respectfully submitted,

"ARIZONA MINE SUPPLY COMPANY.

"By CHAS. T. JOSLIN, Pres't.

"Accepted: December 5, 1911.

"ARIZONA LEAD & ZINC COMPANY.

"By GEO. C. MEESE, General Manager."

Plaintiffs offered no evidence in support of their allegation that the "defendant Arizona Mine Supply Company has been fully paid and satisfied for each and every article mentioned" in the complaint, "and has no claim upon the same as against the defendant Arizona Lead & Zinc Company." It was admitted by counsel during the course of the trial that the articles placed upon the mines by the Arizona Lead & Zinc Company were furnished by the Arizona Mine Supply Company under their contract. Defendant introduced evidence tending to prove that the sum of $395.46 remains due from the Lead & Zinc Company to the Mine Supply Company upon the purchase price of the said machinery so furnished, and this evidence was not disputed. No other evidence was offered or received upon that question.

The evidence wholly fails to support the decree rendered, in that the evidence fails to show that defendant Mine Supply

Company's conditional bill of sale is invalid, but, on the contrary, it does show that such contract is a valid and subsisting contract, the terms and conditions of which plaintiffs had constructive notice before any rights to the property accrued to them by reason of nonpayment, and all their rights so acquired were only such as belonged to the Arizona Lead & Zinc Company at the time of such default, and the evidence is conclusive that such defendant had no title to the property but only a right to the possession subject to be terminated by the Mine Supply Company at its will. Plaintiffs then acquired the right to the possession of the property, subject to the will of the Mine Supply Company, and the further right to discharge the Mine Supply Company's claim of the balance actually due upon the purchase price and thereby acquire full title with this right to possession. Without such payment or offer to pay, the plaintiffs have shown no equitable right in the property as against appellant, except the right of possession during the will of said defendant.

The decree appealed from must be vacated for the reasons stated. The cause is remanded, with instructions to the lower court to vacate the decree and enter a decree dismissing the complaint.

FRANKLIN, C. J., concurs.

ROSS, J., took no part in the decision of this cause.

Application for rehearing denied.