[Civil No. 2281. Filed December 12, 1925.]

[241 Pac. 503.]

# SALT RIVER VALLEY WATER USERS' ASSOCIATION, a Corporation, Appellant, v. W. S. NORVIEL, as State Water Commissioner of the State of Arizona, and UNITED VERDE COPPER COMPANY, a Corporation, Appellees.

1. WATERS AND WATERCOURSES—APPLICATION HELD TO BE FOR PERMIT TO MAKE APPROPRIATION AND NOT FOR TRANSFER OF POINT OF DIVERSION.—Application by private corporation to state water commissioner *held* to be for enlargement of water appropriation and not merely for transfer of point of diversion.

2. WATERS AND WATERCOURSES—COMPLAINT HELD SUFFICIENT FOR ADJUDICATION OF RIGHTS OF APPROPRIATORS OF WATERS.—Plaintiff corporation, alleging its duty to divert water from named rivers, appropriated by its shareholders, prayed for cancellation of permit to appropriate water issued by state water commissioner to defendant under Laws of 1919, chapter 164, section 56, which provided that nothing therein contained should interfere with vested rights of water users. *Held* that, while main purpose of complaint was to cancel defendant's permit, it was sufficient on which to have adjudication of rights of appropriators, and, if defendant's contention that its permit was only for change in point of diversion of water, then permit may be modified.

3. WATERS AND WATERCOURSES—COMPLAINT PRAYING CANCELLATION OF PERMIT TO DEFENDANT HELD SUFFICIENT.—Where plaintiff alleged appropriation of all waters of named river, except at times of great floods, and set up issuance of permit to defendant, and defendant by demurrer to complaint relied entirely on the permit, complaint was sufficient on which to base adjudication of rights of appropriators as between plaintiff and its shareholders and defendant, and, if plaintiff and shareholders were appropriators of all waters except in times of great flood, then it was entitled to decree so adjudicating and cancellation of permit as prayed.

4. WATERS AND WATERCOURSES—CORPORATION ALLEGING DUTY TO DIVERT WATERS APPROPRIATED BY SHAREHOLDERS HELD ENTITLED TO SUE TO QUIET TITLE.—Corporation alleging duty to divert waters from named rivers appropriated by its shareholders *held* in public interest to have right to bring action on their behalf to quiet title in such appropriations.

5. Quieting Title—Complaint Alleging Interest Claimed by Defendant Adverse to Plaintiff's Claim Held Sufficient. — While plaintiff in action to quiet title must bring himself within the statute, it is not necessary that he should allege adverse interest in language thereof; it being sufficient if it appears from complaint that an interest is claimed by defendant and that such interest is adverse to plaintiff's claim.

6. Waters and Watercourses—Decision of Water Commissioner Held Not Conclusive as to Facts.—Notwithstanding Water Code permits appeal from decision of water commissioner when permit is denied, where appearance of plaintiff before water commissioner was only as matter of courtesy and to protest issuance of permit to defendant, such appearance gave commissioner jurisdiction neither of the subject matter or parties, except to grant or deny or permit; his decision as to rights of the parties in waters not being conclusive as to facts.

See (1) 40 Cyc., p. 711, n. 59 New. (2) 40 Cyc., p. 714, n. 77. (3) 40 Cyc., p. 718, n. 6, p. 733, n. 21 New, p. 737, n. 58 New. (4) 40 Cyc., p. 731, n. 6. (5) 40 Cyc., p. 732, n. 19 New. (6) 40 Cyc., p. 711, n. 59 New, p. 714, n. 77.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Alfred C. Lockwood, Judge. Reversed and remanded.

## Statement of Facts.

This action was brought by the appellant against the appellees, Norviel, as state water commissioner, and the United Verde Copper Company. The action is in the nature of a suit to quiet title, and specifically prays for the cancellation of a permit to appropriate water issued by the appellee Norviel, as state water commissioner, to the appellee, United Verde Copper Company, and for general relief. The amended complaint, aside from formal allegations, in general alleges:

That the plaintiff is, by the contract created between it and its shareholders by its articles of incorporation, legally charged with the duty of diverting from the Salt and Verde Rivers and carrying to the

lands of its shareholders, comprising 203,000 acres of irrigable land in the Salt River Valley, all waters appropriated by said shareholders from the Salt and Verde Rivers. That the duty of so diverting water appropriated by the shareholders of plaintiff was vested in the United States of America by contract between such shareholders and the United States, and transferred by the United States to the association by agreement providing for the operation by the plaintiff of the Salt River project.

That plaintiff is, by contract with the owners of 35,000 additional acres of land, charged with the duty of diverting waters from the Salt and Verde Rivers and carrying the same to said lands, in addition to carrying water to the lands of its shareholders. That most of these additional lands have appropriations prior to the lands of plaintiff's shareholders, so that any waters taken out of the Salt and Verde Rivers by others must come out of the amount allotted to plaintiff's shareholders.

That of the 203,000 acres aforesaid and the 35,000 acres aforesaid, 132,133 acres had established appropriations to the waters of the Salt River below its junction with the Verde River in the year 1903. That in the year 1903 the United States undertook the construction of a reservoir on the Salt River, and proceeded with the construction of the same, so that the same was practically completed in the year 1910. That said reservoir is used for storing water for the benefit of the shareholders of plaintiff.

That in 1905 there was filed in the superior court of Maricopa county, Arizona, a complaint to which all the land owners whose lands are supplied with irrigation water from the Salt River below its junction with the Verde River, as well as the United States of America, were made parties. That a judg-

ment was rendered in this suit, commonly known as the Kent decree, on the first day of March, 1910, establishing the respective dates of appropriation of the various lands included in the decree. That said judgment determined that 151,083 acres had established and existing appropriations of water, and that 45,325 miner's inches of water, constant flow, were required to irrigate the same. That said Kent decree also provided that the diversion of water from the Salt and Verde Rivers should be under the direction of a water commissioner to be appointed by the court. That the officials of the United States in charge of the project should be subject to such water commissioner, and provided that said officials should store no water in the Roosevelt Reservoir without the consent of the land owners who were awarded appropriations, except when the combined flow of the Salt and Verde Rivers exceeded the amount required for the lands awarded appropriations, as established in said decree, and, whenever the combined flow of the Salt and Verde Rivers exceeded the amount required for the irrigation of said lands, as fixed in said decree, the officials should have the right to store in the Roosevelt Reservoir all waters of the Salt River not at the time required for the irrigation of the aforesaid lands. No appeal having been taken from the Kent decree, it became final in the year 1910, and the dates of appropriation therein adjudicated were approved, confirmed, and established by the state Water Code Act of the state of Arizona in the year 1919.

That from the year 1910 up to the present time the rule of diverting and storing of the waters of the Salt River, as stated in the Kent decree, has been followed by the officials of the United States and the plaintiff. That between March 1, 1910, and the twenty-sixth day of June, 1919, the date the state Water Code became effective, there was brought into

cultivation as part of the Salt River project, approximately 87,000 acres of additional land, and appropriations thereafter established for the waters of the Salt River below its junction with the Verde River. That ever since 1910 the United States, until October, 1917, and since that date plaintiff, as successor of the United States, have diverted from the Verde River for use upon the lands of plaintiff's shareholders and the other lands to which plaintiff is bound by contract to deliver water, all of the waters of the Verde River except a portion of the flood waters thereof at times of large floods, and that such large floods do not occur frequently, and at times several years have elapsed between the occurrence of such large floods.

That on or about the twenty-eighth day of October, 1921, the defendant United Verde Copper Company filed with the defendant W. S. Norviel, as state water commissioner, an application for a permit to appropriate of the waters of the Verde River and Sycamore Spring and Sycamore Creek, branches of the Verde River, seven cubic feet of water per second for concentrating, smelting, and manufacturing purposes, in addition to 2⅔ cubic feet of water per second theretofore appropriated. That plaintiff learned of said application and objected to the allowance thereof. That said application was granted by the state water commissioner on the twenty-first day of February, 1922, and the permit of the commissioner granting the same was thereupon duly recorded in the office of said state water commissioner.

The complaint further alleges upon information and belief that W. S. Norviel, as state water commissioner, did not find that there were any unappropriated waters of the Verde River, Sycamore Spring, or Sycamore Creek, but did find that all said waters had theretofore been appropriated by the owners of the

lands represented by the plaintiff, but granted said permit for the reason that he was under the erroneous impression that said permit, if so granted by him, and when carried through to completion, would not have the effect of granting a new appropriation to said United Verde Copper Company, but would merely have the effect of transferring an appropriation already existing from one point of diversion to another point of diversion, and upon information and belief alleges that the said W. S. Norviel, as state water commissioner, did find that the appropriation applied for in said application, if it were a new appropriation, would conflict with the vested rights of the lands represented by plaintiff, but acted under the erroneous construction of the state Water Code that he has the power and authority to disregard the vested rights of prior appropriators where in his opinion the interests of the state as a whole would be best served by granting new permits to others.

The amended complaint sets forth the application, together with a permit indorsed thereon. It alleges that said permit is, in fact, a legal declaration by the state water commissioner that the lands represented by the plaintiff have not an appropriation of the natural flow of the Verde River; that said permit is a permit to take from the waters of the Verde River at all stages of the flow thereof seven cubic feet per second of water, constant flow, of the rights of the lands represented by the plaintiff; that said permit is not a permit merely to take the flood waters of the Verde River, but is a permit for the appropriation of the normal flow thereof, and that there are no unappropriated waters of the Verde River available for appropriation and use as contemplated by said permit; that the only waters of the Verde River available for appropriation are surplus flood waters at times of great flood, which cannot be utilized in the manner

contemplated by said permit; that the said permit and the record thereof in the office of the state water commissioner is a cloud upon the title of the water rights of the plaintiff and all land owners represented by it.

It is further alleged upon information and belief that the United Verde Copper Company intends to and will proceed with the construction of the diversion works which are described in its application, and that when said works are completed it will apply to the state water commissioner for a certificate of appropriation, as provided by the state Water Code; that the state water commissioner of the state of Arizona has agreed with the said United Verde Copper Company that when said works are completed he will issue said certificate of appropriation; that when said certificate of appropriation is issued the said United Verde Copper Company will have title to said appropriation, and will undertake, under the guise of said certificate of appropriation, to divert waters of the Verde River in the manner described in its application, to the prejudice of the plaintiff and the lands represented by it, and will eventually acquire a good title to said waters by adverse user.

The prayer of the plaintiff is that it be adjudged and decreed that the permit set forth in the complaint conflicts with the vested water rights of the lands represented by the plaintiff, that said permit was issued under an error and misconception of law, and that the record thereof be canceled and the cloud thereof removed from the title of the plaintiff and the lands represented by it, and for general relief.

We herewith set forth so much of the application and permit as appears to be pertinent to the issues involved as follows:

"Enlargement Permit No. E–10.
"Application for a Permit to Appropriate the Public
Waters of the State of Arizona.

"The United Verde Copper Company . . . do
hereby make application for a permit to appropriate
the following described public waters of the state of
Arizona, subject to existing rights: . . .

"1. The source of the proposed appropriation is
the Sycamore springs and the waters of Sycamore
creek, through the channel of Sycamore creek and the
Verde river, and the waters of the Verde river.

"2. The appropriation to be made by the enlarge-
ment (or extension) of pumping plant . . . owned by
the United Verde Copper Company.

"3. The amount of water which the applicant in-
tends to apply to beneficial use is seven (7) cubic
feet per second, which amount is in addition to the
present amount diverted at pumping plant.

"4. The use to which the water is to be applied is
concentrating, smelting, and manufacturing. . . .

"Location and Description of Ditch or Works Which
It is Proposed to Enlarge or Extend.

"5. Subdivisions (a), (b), (c), (d), (e), (f), and
(g) cover the location and description of the pumping
plant, pipe line, and diversion works of the United
Verde Copper Company.

"Description of Proposed Enlargement.

"6. (a) The pumping plant, after enlargment, will
have a capacity of nine and two-thirds (9⅔) cubic
feet per second, which will be four (4) times its
present capacity. . . .

"(b) The dimensions of pipe line just below the
pumping plant, when enlarged, to be: Twice the
present capacity —— feet; width on bottom —— feet;
depth of water —— feet, grade —— feet fall per
1,000 feet.

"(c) At —— miles from headgate; width on top
(at water line) —— feet; width on bottom —— feet;
depth of water —— feet; grade —— feet fall per
1,000 feet. . . .

"(d) The pipe line, as enlarged, to be 0.51 miles
in length, terminating in the . . .

"(e) The head of the proposed extension is located as above. . . .

"Fill in the following information where the water appropriation is to be used:

"For: Irrigation—

"7. . . .

"Power, mining, manufacturing, or transportation purposes—

"8. . . .

"Municipal supply—

"9. . . .

"10. Estimated cost of the proposed extension or enlargement, $30,000.00

"11. Construction work will begin on or before October 15, 1922.

"12. Construction work will be completed on or before October 15, 1926.

"13. The water will be completely applied to a beneficial use on or before October 15, 1926. . . .

"(Application duly signed.)

"Remarks: The seven (7) second feet applied for at the pumping plant in this application is not a new appropriation of water, but includes water artificially developed by this claimant, and also transferred water, to both of which applicant already claims a right.

"State of Arizona,

"County of Maricopa,—ss.:

"This is to certify that I have examined the foregoing application and do hereby grant the same, subject to the following limitations and conditions: That the waters from Sycamore springs be allowed to flow into the Verde river and that all waste water shall be facilitated by applicant in its return to the Verde river. The amount of water diverted and appropriated shall be limited to the amount which can be applied to beneficial use, and not to exceed seven (7) cubic feet per second, in addition to the 2⅔ second feet at present diverted at pumping plant. Actual construction work shall begin on or before October 15th, 1922, and shall thereafter be prosecuted with

reasonable diligence and be completed on or before October 15, 1925.

"Witness my hand this 21st day of February, 1922.

"W. S. NORVIEL,

"State Water Commissioner.

"Approved: February 21, 1922.

"Recorded in Book No. 1 of Enlargements, on page ———.

"W. S. NORVIEL,

"State Water Commissioner."

Messrs. Kibbey, Bennett, Gust & Smith, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson, Assistant Attorney General, and Messrs. Anderson, Gale & Nilsson, for United Verde Copper Company.

CHAMBERS, Superior Judge (After stating the facts as above).—The record upon this appeal presents but a single question: Does the amended complaint state a cause of action? The appellees insist that it does not, and base their argument upon five propositions, stated as follows:

(1) The amended complaint shows upon its face that there was no application for a permit to make an appropriation of water, but it was for the transfer of the point of diversion of, and the more efficient and economic use of, water belonging to the applicant, and that the permit was issued in accordance therewith, and not for a new appropriation.

(2) The mere granting of a permit by the state water commissioner does not interfere with the rights of the appellant or its stockholders; it does not create any cloud upon their vested water rights; it is not any claim adverse to their vested water rights; and therefore does not constitute the basis for a cause of action.

29 Ariz.—24

(3) The amended complaint does not state a cause of action to quiet title in equity or otherwise, and it shows on its face that the appellant has no right to bring the action.

(4) The amended complaint shows that the appellant did not pursue the remedy provided by the state Water Code, which remedy is exclusive, and is adequate, full and complete.

(5) The amended complaint shows upon its face that, this being an independent suit and not an appeal, no cause of action is stated because the decision of the state water commissioner is conclusive as to all facts, and there are no allegations of mistakes of law or fraud.

Taking up these propositions in their order, we cannot accede to the proposition that the application shows on its face that it is not an application for a permit to make an appropriation of water, but is merely for the transfer of the point of diversion, and that the permit was issued for that purpose and not as a new appropriation. It does appear that one of the purposes of the permit is to change the point of diversion, and under the heading "Remarks" at the end of the application it is recited that:

"This is not a new appropriation of water, but includes water artificially developed by this claimant, and also transferred water, to both of which applicant already claims a right."

Notwithstanding this, the permit is entitled "Enlargement Permit," and at several places in the application it appears that the application is rather for an enlargement of its appropriation than merely for a change in the point of diversion. At any rate the complaint substantially alleges that the appellant and its shareholders have appropriated all the normal flow of the Verde River, so that any use, except as

otherwise indicated in this opinion, by or on behalf of the United Verde Copper Company, would be adverse to the appellant.

Taking up the second proposition, the permit issued by the state water commissioner, which the appellant asks the court to cancel, was issued under the provisions of chapter 164 of the Session Laws of 1919, as amended by chapter 64 of the Session Laws of 1921. Section 56 of this act provides:

"Nothing in this act contained shall impair the vested rights of any person, association or corporation to the use of water."

Section 1 of the act contains a clause of similar import.

Cases somewhat similar in their nature have been before the courts of Idaho and Utah. In the case of *Lockwood* v. *Freeman,* 15 Idaho, 395, 98 Pac. 295, the prior appropriator, having appropriated all the waters of a stream, was held to be entitled to a permanent injunction restraining a second appropriator from using the waters of the stream. The subsequent appropriator attempted to rely upon a license issued by the state engineer. The engineer stood in the same relation to the parties litigant as does the state water commissioner in this case. The court says:

"The state engineer has no authority to deprive a prior appropriator of water from any streams in this state and give it to any other person. Vested rights cannot thus be taken away."

The lower court in the case before us based its decision upon the case of *Yates* v. *Newton,* 59 Utah, 105, 202 Pac. 208. The state engineer had approved two applications to appropriate water for irrigation and power purposes. The trial court found that the respondents had appropriated all the available waters

of the stream. The respondents had brought the action asking the court to adjudge them the owners of the waters sought to be appropriated by appellants, under their application approved by the engineer, and to restrain the appellants from asserting any claim or right to such water. The trial court granted the prayer of the complaint, but the Supreme Court reversed the case. We quote from the decision:

"It seems to be the theory of respondents that the mere fact of the state engineer having granted to appellants a right to the use of five second-feet of unappropriated waters in said canyon will in some way interfere with or disturb the acknowledged rights of the respondents. . . . No order of the engineer can disturb those vested rights."

The Supreme Court was of the opinion that additional water might be developed, and further along says:

"However, as the engineer did not intend to grant and could not grant the appellants any rights that would disturb the rights of respondents, and it being the settled policy of this state to encourage the development of water and to conserve any water running to waste, the court should not have directed the engineer to cancel the orders approving the applications, but should have permitted the appellants to do whatever they may have concluded to be necessary to divert and conserve the waters of the canyon, if such can be done."

The same court in a later case takes up a question very similar to what we have here. *Robison* v. *Green,* 61 Utah, 434, 213 Pac. 1081. In that case the defendant had obtained an approval by the state engineer of his application to appropriate 20 second-feet of the waters of a creek. In approving the application, the engineer made an indorsement thereon that the ap-

proval was no guaranty that the amount of water called for was available. The application also expressly stated that no claim was made for water previously appropriated by others, but only for such water as might be saved from evaporation and seepage. The plaintiffs alleged and proved that they had appropriated all the waters of the creek. They alleged that the contemplated appropriation of water by defendant could not be made without great and irreparable injury to the plaintiffs, and that the approval of the application by the state engineer constituted a cloud upon plaintiffs' title and to the use thereof.

The defendant relied entirely upon his application filed in the office of the state engineer and the engineer's qualified approval thereof. No evidence was offered that any water could be developed and saved, or, if developed and saved, how it could be segregated and applied without interfering with the rights of plaintiffs. The court upheld a decree of the trial court quieting the title of the plaintiffs as against the defendant under his application, modifying it only as to the right of the defendant to make a future application for water.

We have the same situation here. The appellant alleges an appropriation of all the water, except in times of great floods, and sets up the issuance of the permit. The appellee demurs to the complaint. By so doing it relies entirely upon the permit. While it is apparent that the main purpose of this complaint is the cancellation of the permit issued by the water commissioner, the complaint is sufficient in our judgment upon which to base an adjudication of the rights of appropriators in and to the waters of the Verde River as between the appellant and its shareholders and the United Verde Copper Company, and, if it be correct as alleged that the appellant and its share-

holders are appropriators of all the waters of the Verde River except in times of great flood, then it is entitled to a decree so adjudicating and canceling the permit as prayed. If it be true, as claimed by appellee, that this permit is for nothing more than a change in the point of diversion of a prior appropriation, then that appropriation can be fully established by a court decree and the permit can be modified. If there is any opportunity for the appellee to develop any additional water, it should be granted that right; and, if its use of the water for concentrating, smelting and manufacturing purposes does not appreciably lessen the quantity or interfere with its use for irrigation of the lands of appellant's shareholders, the appellee should have the right to divert and use what it actually requires for such purposes.

While the opinion in the case of *Robison* v. *Green, supra,* was published a few weeks before the decision of the lower court in the instant case, it is only fair to the learned trial judge who presided therein to state that the decision was not available in the digests at the time and was not called to his attention.

Upon the third proposition we might say that to deny the appellant in this case the right to bring the action in behalf of its shareholders would mean that enormous expense and serious complications would arise in attempting to make all the water users of the Salt and Verde Rivers parties to this litigation. In the public interest, if for no other reason, the appellant should be permitted to bring the action for and in behalf of its shareholders.

In *Montezuma Canal Co.* v. *Smithville Canal Co.,* 218 U. S. 371, 54 L. Ed. 1074, 31 Sup. Ct. Rep. 67, it is held that certain canal companies and individuals, whether viewed as appropriators of water, or as mere carriers for others, sufficiently represented the

users of the waters of the respective canals to cause such water users to be bound by a prior judgment in which the Montezuma Canal Company was the plaintiff suing for and in behalf of its shareholders. The right of a carrying company to maintain an action of this nature in behalf of its stockholders who are the users of the water is upheld by the courts of Colorado, California and Washington. *Thorpe* v. *Tenem Ditch Co.,* 1 Wash. 566, 20 Pac. 588; *Arroyo Ditch & Water Co.* v. *Baldwin,* 155 Cal. 280, 100 Pac. 874; *Montrose Canal Co.* v. *Loutsenhizer Ditch Co.,* 23 Colo. 233, 48 Pac. 532. We think that in the public interest the same right should prevail in Arizona.

Appellee insists that an action to quiet title being a statutory action in this state, the plaintiff must always bring himself within the statute, and that in this case there is no allegation that the appellee United Verde Copper Company claims any interest in the waters of the Verde River adverse to the appellant. While it is true that the plaintiff in an action to quiet title must bring himself within the statute, it is not necessary that he should allege the adverse interest in the language of the statute. It is sufficient if it appears from the complaint that an interest is claimed by the defendant, and that such interest is adverse to the claim of the plaintiff. *Arizona Mine Supply Co.* v. *Bolman,* 15 Ariz. 504, 140 Pac. 490.

The fourth and fifth propositions deserve brief mention. The Water Code provides that the applicant for a permit to appropriate the waters of a public stream in the state of Arizona may appeal from the decision of the water commissioner to the superior court when a permit is denied. However, no hearing is provided for when prior appropriators object to the issuance of a permit. There is a pro-

vision in the Water Code for a hearing where the commissioner undertakes, in the manner provided therein, to make a determination of the relative rights of claimants to the waters of a stream. There is no pretense that this was the procedure here. Under the procedure adopted in this case, the commissioner had no jurisdiction to settle and determine the relative rights of the appellant and appellee United Verde Copper Company in and to the waters of the Verde River. The appellant was before the water commissioner as a matter of courtesy. This appearance would not give the commissioner jurisdiction either of the subject matter or the parties for any purpose except to grant or deny the permit, and his orders can in no way interfere with vested rights. The commissioner having no jurisdiction to hear and determine the respective rights of the parties, it follows that no decision of the commissioner could be conclusive as to the facts.

The judgment is reversed and remanded, with instructions to overrule the demurrer to the amended complaint, and for such further proceedings as shall not be inconsistent with this opinion.

McALISTER, C. J., and ROSS, J., concur.

NOTE.—Judge LOCKWOOD, being disqualified, the Honorable W. R. CHAMBERS, Judge of the Superior Court of Graham County, was called to sit in his stead.