[No. 22470. *En Banc.* July 8, 1930.]

GEORGE H. FUNK, et al., *Appellants,* v. CHARLES J. BARTHOLET, *as State Supervisor of Hydraulics, Respondent.*[1]

*Geo. H. Funk,* for appellants.

*The Attorney General* and *H. C. Brodie, Assistant,* for State Supervisor of Hydraulics.

*John A. Laing* and *Henry S. Gray,* for respondent Inland Power & Light Co.

[1]Reported in 289 Pac. 1018.

PARKER, J.—This cause was brought into the superior court for Clark county by George H. Funk and wife by their notice of appeal and complaint, seeking reversal of the findings and decision of the state supervisor of hydraulics, granting to the Inland Power & Light Company, a public service corporation, permits to appropriate, for power purposes, unappropriated waters of the north fork of the Lewis river, and permits to store such appropriated waters by two dams in that river. The cause was brought into this court by appeal of Funk and wife from the orders and judgment of the superior court hereinafter quoted, which leaves the decision of the supervisor undisturbed. The appeal proceedings in the superior court and in this court were prosecuted under the provisions of § 11 of the water code, hereinafter quoted.

It is desirable that we have before us at the outset of our inquiry the provisions of the water code with which we are here concerned. Since the section numbers of the water code, as enacted by chapter 117, Laws of 1917, p. 447, have been preserved in the amendments thereto by chapter 71, Laws of 1919, p. 141, chapter 161, Laws of 1925, Ex. Ses., p. 457, and chapter 122, Laws of 1929, p. 269, we quote and notice its pertinent provisions by reference to such section numbers as follows:

"Section 1. Subject to existing rights all waters within the state belong to the public, and any right thereto, or to the use thereof, shall be hereafter acquired only by appropriation for a beneficial use and in the manner provided and not otherwise; and, as between appropriations, the first in time shall be the first in right. Nothing contained in this act shall be construed to lessen, enlarge or modify the existing rights of any riparian owner, or any existing right acquired by appropriation, or otherwise. Rem. Comp. Stat., § 7351.

586

"Sec. 4. The beneficial use of water is hereby declared to be a public use, and any person may exercise the right of eminent domain to acquire any property or rights now or hereafter existing when found necessary for the storage of water for, or the application of water to, any beneficial use, . . ." Rem. Comp. Stat., § 7354.

"Sec. 5. The administration of this act is imposed upon an engineer to be known as the state hydraulic engineer." Rem. Comp. Stat., §7355.

"Sec. 11. Any person, corporation or association feeling aggrieved at any order, decision, or determination of the state hydraulic engineer, or of any assistant or deputy, or any water master, affecting his interests, may have the same reviewed by a proceeding for that purpose, in the nature of an appeal, initiated in the superior court of the county in which the matter affected, or a portion thereof is situated. The proceedings in every such appeal shall be heard and tried by the court and shall be informal and summary, but full opportunity to be heard and present evidence shall be had before judgment is pronounced. No such appeal shall be entertained unless notice of appeal containing a statement of the substance of the order, decision, or determination complained of and the manner in which the same injuriously affects the appellant's interests, shall have been served personally upon the state hydraulic engineer, or by registered mail, at his office at the state capital, within twenty days following the rendition of the order, decision or determination appealed from and communication thereof in writing to the person affected thereby. . . . Appeal shall lie from the judgment of the superior court as in other civil cases . . ." Rem. Comp. Stat., § 7361.

"Sec. 27. Any person, municipal corporation, firm, irrigation district, association, corporation or water users' association hereafter desiring to appropriate water for a beneficial use shall make an application to the state hydraulic engineer for a permit to make such appropriation, and shall not use or divert such waters until he has received a permit from such state hydraulic engineer as in this chapter provided. The construction of any ditch, canal or works, or performing

any work in connection with said construction or appropriation, or the use of any waters, shall not be an appropriation of such water nor an act for the purpose of appropriating water unless a permit to make said appropriation has first been granted by the state hydraulic engineer: . . ." Rem. Comp. Stat., §7378.

"Sec. 28. Each application for permit to appropriate water shall set forth the name and postoffice address of the applicant, the source of water supply, the nature and amount of the proposed use, the time during which water will be required each year, the location and description of the proposed ditch, canal, or other work, the time within which the completion of the construction and the time for the complete application of the water to the proposed use. . . . If for power purposes, it shall give the nature of the works by means of which the power is to be developed, the head and amount of water to be utilized, and the uses to which the power is to be applied. If for construction of a reservoir, it shall give the height of the dam, the capacity of the reservoir, and the uses to be made of the impounded waters." Rem. Comp. Stat., § 7379.

"Sec. 30. Upon filing an application which complies with the provisions of this act and the rules and regulations established hereunder, the state hydraulic engineer shall instruct the applicant to publish notice thereof in a form and within a time prescribed by said state hydraulic engineer, in one newspaper of general circulation published at the county seat of the county or counties in which the storage, diversion and use are to be made, and in such other newspapers as the state hydraulic engineer may direct, once a week for two consecutive weeks." Rem. 1927 Sup., § 7381.

"Sec. 31. When an application complying with the provisions of this chapter and with the rules and regulations of the state hydraulic engineer has been filed, the same shall be placed on record in the office of the state hydraulic engineer, and it shall be his duty to investigate the application, and determine what water, if any, is available for appropriation, and find and determine to what beneficial use or uses it can be applied. . . . If it is proposed to appropriate water for the

purpose of power development, the state hydraulic engineer shall investigate, determine and find whether the proposed development is likely to prove detrimental to the public interest, having in mind the highest feasible use of the waters belonging to the public. . . . The state hydraulic engineer shall make and file as part of the record in the matter, written findings of fact concerning all things investigated, and if he shall find that there is water available for appropriation for a beneficial use, and the appropriation thereof as proposed in the application will not impair existing rights or be detrimental to the public welfare, he shall issue a permit stating the amount of water to which the applicant shall be entitled and the beneficial use or uses to which it may be applied: . . . But where there is no unappropriated water in the proposed source of supply, or where the proposed use conflicts with existing rights, or threatens to prove detrimental to the public interest, having due regard to the highest feasible development of the use of the waters belonging to the public, it shall be the duty of the state hydraulic engineer to reject such application and to refuse to issue the permit asked for. If the permit is refused because of conflict with existing rights and such applicant shall acquire same by purchase or condemnation under section 4 hereof, said state hydraulic engineer may thereupon grant such permit.'' Rem. Comp. Stat., § 7382.

Section 33 (Rem. Comp. Stat., § 7385), provides for diligent prosecution of the permitted project looking to the putting of the water to the contemplated beneficial use, and for loss of the appropriation right for failure in that respect.

''Sec. 35. The right acquired by appropriation shall relate back to the date of filing of the original application in the office of the state hydraulic engineer.'' Rem. Comp. Stat., § 7387.

The facts stated in appellants' notice of appeal and complaint, as grounds for reversal of the decision of the supervisor, filed in the superior court under

§ 11 of the water code, may be summarized as follows: The portion of the Lewis river here in question flows in a southwesterly direction along the northwesterly boundary of Clark county. Appellants own a quarter section of timber land in Clark county near to, but not bordering upon, the waters of the river; that is, the nearest point of their land to the waters of the river is approximately one-quarter of a mile distant therefrom in a southeasterly direction. From a point some distance above appellants' land down to where the river empties into the Columbia river, it is navigable for the driving of logs.

On January 25, 1929, the Inland Power & Light Company filed with the supervisor two applications for permission to appropriate the waters of the river in two separate localities, one near Ariel and one near Yale; and, at the same time, that company filed with the supervisor two additional applications for permission to dam the waters of the river at each of these two locations, and thereby create an efficient head of water for generating power, and a storage reservoir. Each of those two locations is well adapted to that purpose. The Yale location is some twelve miles above the Ariel location. Appellants' land is some five miles above the Yale location, and so situated in the valley of the river that the damming of the river at the Yale location, as proposed, and the consequent raising of the water back of such dam will result in overflowing the larger portion of appellants' land.

The two applications for permit to appropriate water are each for the "entire stream flow;" the applicant, Inland Power & Light Company, evidently proceeding upon the assumption that the entire stream flow at the two stations is unappropriated. Notice of these applications was duly published as provided by § 30 of the water code. Thereafter, on June 19,

1929, the supervisor disposed of these four applications by recitals, findings and decision as follows:

"On January 25, 1929, the Inland Power & Light Company filed application 2505, to appropriate 4,000 cubic feet per second of the waters of the north fork of the Lewis river at the Ariel site; application 2504-C, to appropriate 3,000 cubic feet per second of the waters of the same stream at the Yale site; application 2506, for storage of 220,000 acre feet of water at the Ariel site; and application 2508, for storage of 220,000 acre feet at the Yale site.

"The statutory examination fees have been paid, and notices of water right applications have been published as required by law.

"The Inland Power & Light Company is a public service corporation, whose principal business is the development and sale of electric power in this state and in Oregon. In southwestern Washington it serves Klickitat, Skamania, Clark and Cowlitz counties, the energy having been drawn heretofore from an 18,000 h. p. hydroelectric plant on the White Salmon river;

"On February 14, Geo. H. Funk filed protest against issuance of permit under these applications on the grounds that the proposed development would prevent the use of the river for the driving of logs and other timber products;

"On April 15, 1929, the Lewis River Boom & Logging Company filed a like protest on the same grounds.

"The applicant has made extensive surveys, studies and investigations of the proposed development, including an elaborate geological study by diamond drilling and excavation of the dam sites; the applicant has also in cooperation with the United States Geological Survey, made gauging and kept records of the stream flow for many years;

"The supervisor has examined the available data, has fully considered the protests on file; has given consideration to the effect of the proposed development upon the public welfare, having in mind the highest feasible development of the water belonging to the state and as a result of this consideration has arrived at the following:

FINDINGS OF FACT:
"I.

"That there is public water available for storage and appropriation as proposed in the plans now on file in this office for what are therein referred to as the Ariel and Yale or Basket projects;

"II.

"That the development proposed by the applicant on both of these projects constitutes a beneficial use of the public waters of this state;

"III.

"That the proposed development will not conflict with existing rights, provided proper provision is made in the construction of the dams to provide for floating of logs and other timber products and for transporting them over the dams; and provided further that suitable provision be made for protection of the fishing industry as to both food and game fish.

"IV.

"That the plan of development proposed is in line with the highest feasible development of the waters of the stream.

"V.

"That the applicant, the Inland Power & Light Company, has the financial and engineering ability to develop the project as proposed, and that it intends in good faith to proceed with such development;

"Pursuant to the findings of fact hereinabove set out, the supervisor announces this:

"DECISION:

"That permits will issue to the applicant, the Inland Power & Light Company, under its applications numbered 2504-C; 2505; 2506, and 2508, subject to existing rights on payment of the filing and recording fees by statute provided."

The supervisor demurred to appellants' notice of appeal and complaint filed in the superior court, resting his demurrer upon the ground that there are not stated therein facts entitling appellants to reversal of his decision. Sometime thereafter appellants made a

motion in the superior court for an order making the Inland Power & Light Company a party defendant in the proceeding in the superior court. Thereafter appellants' motion and the supervisor's demurrer, being at the same time argued and submitted to the superior court for decision, were disposed of by the court by orders and judgment, reading, in so far as need be here noticed, as follows:

"ORDERED that plaintiffs' motion to join Inland Power & Light Company as a defendant herein be and the same is hereby denied, without prejudice, however, to the bringing of any other proceeding, suit or action by plaintiffs against said Inland Power & Light Company, or those claiming by, through or under it, for the protection or redress of plaintiffs against any trespass upon or injury to their property or property rights by said Inland Power & Light Company, or by those claiming by, through or under it as aforesaid; and further

"ORDERED that the said demurrer be and the same is hereby sustained.

"And the plaintiffs, by their attorney, George H. Funk, having on this date in open court declined to plead further and elected to stand upon their notice of appeal and complaint, it is further

"ORDERED that the said cause be and the same is hereby dismissed, but without prejudice in the respect above set forth."

It is from this disposition of the cause by the superior court that the appeal to this court is prosecuted by Funk and wife.

■ The contentions of counsel for appellants seem to proceed upon the theory that the granting of the permits by the supervisor to the Inland Power & Light Company, and the refusal of the superior court to reverse the decision of the supervisor and set aside the permits, will be such an adjudication against them as will effectively relegate them to a mere action for

damages against the Inland Power & Light Company after it has actually appropriated and taken possession of their land by overflowing it, or after it has actually damaged their property rights incident to their land in some other manner by the prosecution of its water power project; and that thus they will be deprived of the benefit of § 16, article I, of our state constitution, providing that "no property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner."

We are of the opinion that the decision of the supervisor in granting the permits here in question and the refusal of the superior court to set them aside do not in the least constitute an adjudication impairing appellants' rights guaranteed to them by this constitutional provision. The decision of the supervisor granting the permits, in terms, makes them "subject to existing rights." Indeed, it seems plain to us that the supervisor had no power to grant the permits otherwise than subject to existing rights, and that such would have been their legal effect in the absence of such express reservation in his decision. The superior court also, by its orders and judgment, leaving the decision of the supervisor undisturbed, in express terms, preserved undisturbed appellants' existing rights.

The water code, as we read it, wholly fails to confer upon the supervisor, in a mere permit proceeding of this nature, or upon the superior court upon mere appeal from his decision in any such a proceeding, power to adjudicate existing rights. The several provisions of the water code, above quoted, we think, plainly indicate a legislative intent that the permits therein contemplated to be granted shall be but initiative steps in the appropriation of water belonging to

the state, and are effective only as against the state, and even then only continue effective by proper and diligent prosecution of the project or projects in the manner contemplated by the permit or permits. It is true that the supervisor is called upon to tentatively determine, preliminary to the granting of permits, some questions of more or less public interest, one of which is as to whether or not there is any unappropriated water available for appropriation; and another of which is as to whether or not any further permitted appropriation will conflict with existing rights.

But these, we think, are questions only to be tentatively decided in the interest of the public, and are in no sense intended to be adjudications of private rights. It is true that the supervisor is to cause notice to be published of the applications for permits, but no provision is made in the water code for any hearing by him prior to rendering his decision upon the applications; nor is there any method provided for making any person party to the permit proceeding with a view of therein adjudicating their existing rights.

Besides, we are of the opinion that the tentative decision of the supervisor called for by the water code, as to existing rights which may conflict with an applied-for permit, means only existing conflicting water rights, and not other existing property rights necessary to be acquired by eminent domain proceedings to facilitate the use of the water as contemplated by the permit. The following decisions, under water codes similar to our water code, lend support to our views here expressed: *Speer v. Stephenson,* 16 Idaho 707, 102 Pac. 365; *Washington State Sugar Co. v. Goodrich,* 27 Idaho 26, 147 Pac. 1073; *Basinger v. Taylor,* 30 Idaho 289, 164 Pac. 522; *Yates v. Newton,* 59 Utah 105, 202 Pac. 208; *Salt River Valley Water Users' Ass'n v. Norviel,* 29 Ariz. 360, 241 Pac. 503; *Salt River*

*Valley Water Users' Ass'n v. Norviel,* 29 Ariz. 499, 242 Pac. 1013; *Sauve v. Abbott,* 19 Fed. (2d) 619.

It seems plain to us that, if the Inland Power & Light Company should attempt to take or damage any of appellants' property or property rights incident to their land, before compensating them therefor, as provided by § 16 of article I of our state constitution, they would be clearly entitled to injunctive relief against the Inland Power & Light Company, restraining such taking or damaging, but this is not an appropriate, available proceeding to that end, unless perchance both the Inland Power & Light Company and appellants should therein voluntarily submit that question to the superior court for adjudication.

Counsel for appellants call our attention to our decision in *In re Martha Lake Water Co. No. 1,* 152 Wash. 53, 277 Pac. 382, as indicating a contrary view to that we have here expressed. It is true that controversy arose upon an appeal from a decision of the supervisor of hydraulics granting a permit to appropriate water from Martha lake, which appropriation, if actually accomplished, would damage riparian owners. Upon the matter coming into the superior court by the appeal of such riparian owners, the controversy became one between them and the Martha Lake Water Company, the grantee of the permit, wherein it and the appealing riparian owners voluntarily submitted to the superior court for adjudication the claimed existing water rights of the appealing riparian owners. The case was so voluntarily submitted to and disposed of by the superior court as one of equitable cognizance, and resulted in injunctive relief in favor of the appealing riparian owners and against the Martha Lake Water Company.

That decision is in full harmony with our view here expressed touching the substantive property rights of these appellants; but this is not a case of appellants and the Inland Power & Light Company both voluntarily submitting to the superior court for adjudication appellants' existing property rights.

The recitals of appearances in the orders and judgment of dismissal of the superior court disposing of the cause in that court show that the Inland Power & Light Company did appear and resist, by argument only, appellants' motion to make it a party to the proceeding, but took no other part in the proceeding in that court. This, manifestly, was not a consent on its part that the court adjudicate appellants' existing rights incident to their ownership of their land in question. Indeed, it was in effect a protest against the court's entertaining any such question in that proceeding. Clearly, the court did not err in denying appellants' motion to make the Inland Power & Light Company a defendant in the proceeding.

The orders and judgment of the superior court appealed from are affirmed.

All concur.