[No. 23409. Department Two. December 11, 1931.]

THE STATE OF WASHINGTON, *Respondent,* v. PHIL LAWRENCE, *Appellant.*[1]

*Stephen E. Chaffee,* for appellant.

*Spencer Short,* for respondent.

*The Attorney General* and *John C. Hurspool, Assistant, amici curiae.*

[1] Reported in 6 P. (2d) 363.

MILLARD, J.—The defendant was tried and convicted in a justice court of Kittitas county upon the following complaint filed by the county water master:

"Benj. Vaughn, being first duly sworn, on his oath says that Phil Lawrence on or about the 29th day of April, 1931, in Kittitas county, state of Washington, then and there being, did then and there, unlawfully and willfully interfere with a dam and a headgate for the diversion of water for irrigation. Thereby committing a misdemeanor."

The defendant appealed to the superior court, and, from a conviction therein upon the same complaint, appeals to this court.

Nanum creek flows through the north end of land farmed by the appellant. In 1901, the rights of all the users, except the then owner (who was not a party to the action) of the land now farmed by the appellant, of the water from Nanum creek were determined by what is termed the Ferguson decree.

Following their immediate superior's instructions, given pursuant to the Ferguson decree, a stream patrolman and his assistant made a tour of inspection April 28, 1931, and proceeded to regulate the distribution of the waters of Nanum creek in accordance with the decreed water rights. At a point upon the land of appellant where water was coming out of the creek, they closed a headgate and placed an earthen dam at that location to aid in stopping the flow. As prescribed by the statute, the patrolman signed and placed upon the headgate a printed notice which stated that the flow was thus regulated under the authority vested by statute in the patrolman and watermaster. In the regular course of their duties, the two men proceeded to regulate all the other creeks. The next day, the patrolman on his inspection tour detected the appellant in the act of changing the dam and raising the

headgate. The appellant defiantly threatened to continue to so interfere with the regulation of the stream, whereupon a complaint was filed against him, with the result as above recited.

Appellant contends that the complaint does not state facts sufficient to constitute a crime; that the complaint is fatally defective in failing to allege that the watermaster or some other official posted the statutory notice that the headgate was under such official's control, and in not averring that the water rights of the appellant on the stream in question had been adjudicated.

The water code (Rem. Comp. Stat., § 7351 *et seq.*) clearly expresses the legislative purpose to provide a complete system of regulation for the distribution of the waters of the state, and thereby provide "an inexpensive and ready manner of settling all disputes concerning such matters." *West Side Irrigating Co. v. Chase,* 115 Wash. 146, 196 Pac. 666. Upon the state supervisor of hydraulics is imposed the duty of supervising the public waters within the state, and to regulate and control the diversion of water in accordance with the rights thereto.

The supervisor of hydraulics shall appoint watermasters for such districts as local conditions indicate are necessary to provide the most practical supervision on the part of the state, and to secure to water users the best protection in their rights. In regulating and controlling the use of water within his district, the watermaster is authorized to close or partially close the irrigation headgates. When, in pursuance of his duties, the watermaster regulates a headgate, he is required to attach to that headgate a written notice stating that such headgate has been properly regulated and is under his control. That notice is a legal notice to all parties. Anyone feeling aggrieved at any order or determination of the supervisor of hydraulics or

any watermaster may, under the statute, have the same reviewed by a proceeding for that purpose.

"Any person, corporation or association feeling aggrieved at any order, decision, or determination of the state hydraulic engineer, or of any assistant or deputy, or any water-master, affecting his interests, may have the same reviewed by a proceeding for that purpose, in the nature of an appeal, initiated in the superior court of the county in which the matter affected, or a portion thereof is situated. The proceedings in every such appeal shall be heard and tried by the court and shall be informal and summary, but full opportunity to be heard and present evidence shall be had before judgment is pronounced." Rem. Comp. Stat., § 7361.

Where the water rights of a stream have been adjudicated, the statute provides for the appointment of a patrolman by the supervisor of hydraulics. The patrolman is vested with the same powers as a watermaster appointed under Rem. Comp. Stat., § 7359. The statute reads as follows:

"Where water rights of a stream have been adjudicated a stream patrolman shall be appointed by the supervisor of hydraulics upon application by interested parties making a reasonable showing of necessity therefor, which application shall have been approved by the district water-master if one has been appointed, at such time, for such stream, and for such periods of service as local conditions may indicate to be necessary to provide the most practical supervision and to secure to water users and owners the best protection in their rights.

"The stream patrolman shall have the same powers as a water-master appointed under section 7359, Remington's Compiled Statutes, but his district shall be confined to the regulation of waters of a designated stream or streams. Such patrolman shall be under the supervision of the supervisor of hydraulics, deputy supervisor of hydraulics, or the district water-master appointed for the district in which said stream is located. He shall also enforce such special rules and

regulations as the supervisor of hydraulics may prescribe from time to time." Rem. 1927 Sup., § 7351-1.

The complaint upon which appellant was tried and convicted was laid under the statute reading as follows:

"Any person or persons who shall willfully interfere with, or injure or destroy any dam, dike, headgate, weir, canal or reservoir, flume or other structure or appliance for the diversion, carriage, storage, apportionment or measurement of water for irrigation, reclamation, power or other beneficial uses, or who shall willfully use or conduct water into or through his ditch, which has been lawfully denied him by the watermaster or other competent authority, or shall willfully injure or destroy any telegraph, telephone or electric transmission line, or any other property owned, occupied or controlled by any person, association or corporation, or by the United States and used in connection with said beneficial use of water, shall be guilty of a misdemeanor." Rem. Comp. Stat., § 7393.

The question of the right of a stream patrolman to regulate and control the delivery of water where the water rights of one of the persons affected thereby have not been adjudicated, is not determinable in this action. Appellant's act was violative of a positive law. Where, as in the case at bar, one is prosecuted for a statutory crime, the complaint is sufficient if it charges the crime in the language of the statute. *State v. Tiffany,* 44 Wash. 602, 87 Pac. 932.

The act—interfering with a dam and a headgate for the diversion of water for irrigation—charged as a crime is clearly set forth in the complaint, not only in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended, but also in the very words of the statute defining and describing the offense. It com-

plies with the rule (Rem. Comp. Stat., § 2065) provided for an indictment or information.

"It is undoubtedly the rule in this jurisdiction that it is sufficient, in charging a crime, to follow the language of the statute, where such crime is there defined and the language used is sufficient to apprise the accused, with reasonable certainty, of the nature of the accusation, so that he may be able to avail himself of his acquittal or conviction as a protection against further prosecutions for the same offense." *State v. Randall,* 107 Wash. 695, 182 Pac. 575.

Subdivision one of Rem. Comp. Stat., § 7393, defines and describes three separate and distinct offenses. The first is the offense of which appellant was convicted, upon a complaint which is, as stated above, almost verbatim copy of the pertinent portion of § 7393, *supra.* One is guilty of a misdemeanor, under that section of the statute, if he (1) willfully interferes with or destroys a dam, headgate, or other appliance for the diversion, storage or other handling of water for irrigation; or (2) if he willfully takes water which has been lawfully denied him; or (3) if he willfully injures or destroys any electric lines or other property of any person, association, corporation, or the United States government used in connection with the beneficial use of water. The offense of interfering with a dam and a headgate for the diversion of water for irrigation is a misdemeanor. The prosecution of appellant for that offense raises no question of appellant's right to water from the creek. The question of his right to divert water from the creek can not be determined in this criminal action. As said in *Lambert v. People,* 78 Colo. 313, 241 Pac. 533:

"We do not see how a prosecution for interference with a headgate can be said to be or to raise a question of law or a question of right growing out of or in any way involved or connected with hearing, adjudicating

or settling questions of priority of appropriation between owners of ditches. No adjudication of priority could determine the question of interference nor anything more than the relative right to divert . . . Neither can be determined in an action to try the other.''

The act of interfering with a dam or headgate for the diversion of water for irrigation constitutes a crime under the first subsection of subdivision one of § 7393, *supra*. The taking or removing from the creek of water belonging to another is a separate offense, and one not charged against the appellant. Nor was the appellant charged with the third offense defined and described in subdivision one of § 7393, *supra*.

It can not be successfully urged that the appellant, in the exercise of a claimed right to water, could not wait for the slow processes of the law. It may be that the appellant sustained an injury by the regulation of the headgate; that is, he did not receive all of the water to which he was entitled. His remedy, however, was not to destroy the dam or open or close the headgate, and thus injure others by depriving them of water to which they were entitled, or by his interference with the headgate or other appliances flood lands of others. If appellant had any proper ground for complaint, he could by appropriate proceedings have obtained the relief to which he was entitled.

In *Bush v. State*, 91 Tex. Cr. Rep. 296, 238 S. W. 664, the defendant was charged with unlawfully interfering with a water box *and* with willfully using and conducting water to which he was not entitled in and through his ditch and upon his land. The Texas statute reads as follows:

''Any person who shall willfully open, close, change or interfere with any headgate or water box without lawful authority or who shall willfully use water or conduct water in and through his ditch and upon his

land, to which water he is not entitled, shall be deemed guilty of a misdemeanor.''

On appeal, the information was held duplicitous in charging two separate offenses (interfering with a water box and unlawfully taking of water) in one count. The court said:

''It may be seen from an inspection of the information that the pleader charged appellant with all acts denounced by article 837d. If that article undertakes to define only one offense, and to fix the penalty for the violation thereof, then the information should be upheld. On the other hand, if the article in question defines two offenses, although it provides the same punishment for the violation of both then the two offenses cannot be charged in the same count in the information, and if it has been attempted to do this, the information must be condemned.

''If the article in question had provided that if any person willfully opens, closes, changes or interferes with any headgate or water box without lawful authority and thereby uses or conducts water in and through his ditch upon his land to which water he was not entitled we would have a different question before us. Then it would be the 'use of water to which he was not entitled' which would be condemned, and the opening, closing, breaking or interfering with the gate or water box the means used to accomplish the unlawful purpose. If the interference with the 'headgate' or 'water box' was only incident to the unlawful use of water to which a party was not entitled then the two transactions might be held to be parts of the same offense, or that one necessarily included the other; but it does not appear to us this idea was in the mind of the Legislature. A person might open, close, or otherwise interfere with a 'headgate' or 'water box' having no connection whatever with his own irrigation ditch, and without getting the benefit or intending to get the benefit of any water by reason of such interference. We cannot conceive how a party by closing his own 'water box' and thereby cutting off the flow of water to his land, could be said to be using water to which

he was not entitled. It is true that by opening, closing, or interfering with a 'headgate' or 'water box' he might effect the unlawful use of water to which he was not entitled, and, on the other hand he could open a 'water box' entirely disconnected from his own irrigation ditch and flood land belonging to others or close a 'water box' and thereby deprive some party who was entitled to the use of the water of the benefit of the same. We are inclined to the view that the Legislature was intending to denounce two offenses; one having for its purpose the protection from interference of all 'headgates' or 'water boxes' situated in an irrigation district regardless of whether such interference was to the benefit of the party guilty thereof, and the other to make penal the willful use of water upon the land of a party to which he might not be entitled although the same may have been effected without any interference with the 'headgate' or 'water box.' ''

In *Hamp v. State,* 19 Wyo. 377, 118 Pac. 653, the defendant was convicted of the crime of willfully interfering with the headgate of an irrigation ditch under a statute making one who willfully interferes with any headgate, without authority, guilty of a misdemeanor. Respecting the statutory authority of the water officials in the regulation of the distribution of water, the court held that interference with a headgate to which was attached the required statutory notice that the same was under control of the water official, was a misdemeanor; that the question of the ownership of the ditch and headgate was immaterial, it not being permitted to the individual (though he deem he has water rights permitting him to open the headgate) to enforce what he conceives to be his rights, if by doing so he violates a statute making such act a penal offense. The court said:

''The fact that a water official when engaged in the discharge of his duties pursuant to the statutory pro-

visions, makes or may make an erroneous or wrongful distribution of water in individual cases, or erroneously opens a headgate to the passage of water for the use of an appropriator whose right to so use the headgate or ditch is denied by another, is no reason for holding the statute to be unconstitutional. The important duties imposed upon such officials could not be effectually performed, except with authority over headgates and other diverting works, and the power to regulate them.

"By such supervision no rights of private property are invaded, but, under the police power of the state, in the interest of the public welfare, and for the protection of private as well as public rights, property intended to be used for no other purpose than that of diverting public water is regulated; and it is a mistaken notion that through such regulation private property is taken for either public or private use, within the meaning of the constitutional provision prohibiting such taking without just compensation.

"All property is held subject to such restraints and regulations as the state may constitutionally make in the exercise of its police power. (32 Cyc. 677; see, also, Freund on Police Power, §§ 511-517.)

"It is contended that the notice required to be attached to a headgate whenever the commissioner takes control and regulates the same is insufficient to constitute due process of law, for the reason that the owner is given no opportunity to be heard. As well might it be said that a sheriff or constable before executing a writ, and as a condition to its lawful execution, must first notify the party against whom or whose property it is directed and afford him a hearing as to the manner of its execution or whether it should be executed at all. The notice provided for is for the obvious purpose of aiding in protecting the commissioner against unlawful interference in the discharge of his duties, by informing the interested parties as well as others that the headgate is under official control. It is certainly an untenable proposition that the duty of regulating the distribution of water according to adjudicated priorities cannot be lawfully or constitutionally

performed without first providing a hearing with notice to all interested appropriators or ditch owners to determine the necessity or propriety of the proposed regulation. The statute itself, so far as appears to be necessary, prescribes when and how the duty shall be performed.

"The trial court correctly ruled and instructed that the question of ownership of the ditch and headgate was immaterial, and that it was not within the province of the jury to consider it. In the event that anyone is aggrieved or deems himself aggrieved by the act of the water commissioner or other water official, the law affords him ample civil remedies through which his right as against other parties may be determined. It is held in Idaho that a water master cannot be required, in making a distribution of water, to look beyond the decree to ascertain whether or not the same is supported by the findings; and that, in a civil action to compel him to distribute the water in a different manner than that called for by the decree, no judgment can be entered, unless the other parties to be affected thereby are parties. (*Stethem v. Skinner,* [11 Idaho, 374], 82 Pac. 451.) And so, in Colorado, where it was sought to enjoin the state engineer, division superintendent, and water commissioner from preventing the plaintiffs receiving into their canals the water which they claimed to be entitled, the court said: 'It is doubtless true that water officials must distribute the waters of a district or division according to adjudicated priorities; but when they are avowedly attempting to do so, . . . their action can not be interfered with either by interlocutory order or final judgment, unless the real parties in interest are parties to the action.' (*McLean v. Farmers' Highline, etc. Co.,* [44 Colo. 184], 98 Pac. 16.) If such a question may not be determined in a civil suit for relief against alleged wrongful or mistaken exercise of the power of the water official, unless the other parties whose rights would be affected are parties to the action, and we believe that to be the proper and correct rule, then clearly it is immaterial in a criminal case like the one at bar, where it is not possible for the other interested

parties to appear and be heard. And it would be strange indeed, when a court is powerless to intervene in such a case as the one cited from Colorado, that the individual may himself determine that the commissioner has acted erroneously, and enforce that determination by his own acts, especially in the face of a statute making such acts a penal offense.

"Holding that the statutes here assailed are not unconstitutional upon either of the grounds urged against them, it follows that the assistant water commissioner was authorized to control and regulate in accordance with adjudicated priorities the headgate in question, as well as others. As suggested above, if the defendant had any proper ground to complain of the manner in which or the purpose for which it was so regulated, he might have applied for relief in the courts through some appropriate proceeding, but he was not justified in attempting to enforce what he may have regarded as his legal rights by taking the law into his own hands, thus violating a penal statute."

Except as to the appellant, the water rights of Nanum creek had been adjudicated. Pursuant to the water code, a watermaster had been appointed for the district in which the creek is located. Those whose water rights had been adjudicated were entitled to protection in their rights. As provided by the water code, a stream patrolman was appointed "to provide the most practical supervision and to secure to water users and owners the best protection in their rights." In the course of his duties, and as prescribed by the statute, he attached to the headgate in question the required notice. In defiance of the statute, the appellant destroyed the dam and interfered with the headgate.

True, as appellant contends, a man may not be guilty of the crime of larcenous appropriation of goods when he takes his own property from another. The case at bar, however, is not a prosecution for the un-

lawful taking of property, which would necessitate averment and proof that the property appropriated belonged to another person. Under the statute (§ 7393, *supra*), a man may be guilty of a misdemeanor if he interferes with an irrigation headgate or dam located on his own property. The statute does not permit the individual, though his water rights have not been adjudicated, to enforce—as the appellant contends he was privileged to do—what he deems are his rights, if by so doing he violates a statute making such act a crime.

To discuss all of the authorities cited would serve no useful purpose. All have been considered, and they are either not in point or are not out of harmony with the views herein expressed.

The judgment is affirmed.

TOLMAN, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.