[No. 42448. En Banc. March 29, 1973.]

FRITZ STEMPEL et al., Respondents, v. THE DEPARTMENT OF WATER RESOURCES, Appellant, LOON LAKE PARK COMPANY, Respondent.

*Slade Gorton, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Charles W. Lean, Assistant,* for appellant.

*McNally & Stewart,* by *Fred L. Stewart,* for respondents.

UTTER, J.—The Department of Water Resources of the State of Washington appeals from a superior court decree which remands for further investigation a department decision approving an application for water appropriation. This department is now replaced by the Department of Ecology as of July 1, 1970. RCW 43.21A.

The two basic issues raised by this appeal are: (1) did

the superior court exceed the scope of review permitted by the Administrative Procedure Act (RCW 34.04.130(6)), and (2) what is the department currently obligated to consider when acting upon a water appropriation application?

We find that certain portions of the superior court remand order exceed the permissible scope of review under the Administrative Procedure Act and these are reversed. In those portions of the remand order we find to be valid, we conclude the department action was not finalized prior to the effective dates of the State Environmental Policy Act of 1971, RCW 43.21C, and the Water Resources Act of 1971, RCW 90.54, and that the department is obligated to incorporate certain provisions of these acts into its determinations in this case.

On April 10, 1967, an appropriation application, pursuant to RCW 90.03.250, was filed by Loon Lake Park Company, the intervenor-respondent. The application was for 0.7 cubic feet per second of water to be taken from Loon Lake which would be provided to 143 lots located in the vicinity of Loon Lake for domestic water use. Loon Lake is 28 miles north of Spokane, is 2.6 miles long, covers 1,118 acres, and has a maximum depth of 104 feet. About 20 of the lots owned by the company abut the lake. All the lots are presently able to secure water from three nearby wells, which Loon Lake Park Company alleges provide unsatisfactory water because of its high iron content.

When notice of the application was published, pursuant to RCW 90.03.280, objections were received by the department from 36 persons, including the respondents Stempel and Luiten. The protesters were concerned with numerous pollution and health problems they foresaw as imminent if further water was withdrawn from the lake. On February 15, 1968, a public meeting was held on the application. On April 30, 1968, an order, based on the meeting and the department's investigations (conducted pursuant to RCW 90.03.290), was entered approving the application. Soon thereafter, the respondent protesters appealed the order

and requested a hearing on the matter. The water right permit to the Loon Lake Park Company was stayed and a hearing officer was appointed to hear the contested case. RCW 34.04. Hearings were held on July 30 and 31, 1968, and resulted in an affirmance of the department's actions. Respondents Stempel and Luiten then sought, on May 27, 1969, judicial review of the department's otherwise final order entered on May 2, 1969. RCW 34.04.130.

Review by the Superior Court for Stevens County was based on the record, as required under RCW 34.04.130(5), the legal briefs, and the oral argument of counsel. A remand decree was entered on November 4, 1970, from which the department appeals.

The court entered several findings of fact which varied from those entered by the department. It found that the lake should be preserved at its highest level; that water was available from existing wells and there was no showing the high iron content well water could not be treated; that the department had the duty to guard against any act contributing to pollution of the state's waters; and seemingly found that a previous superior court decree had established a fixed maximum and minimum level for the lake.

The court, in a remand order, also required the department to obtain further evidence on the following seven items:

1. The frequency of use and number of people using Loon Lake for recreational purposes, including the amount of business done by resorts located on this Lake serving the public in a recreational capacity.

2. The amount of water presently being used from the Lake by persons having developed littoral properties.

3. The amount of front feet of presently undeveloped littoral lands, together with a computation of the demands necessary to be considered for future use by the littoral property.

4. The feasibility of Respondent's rendering the water from its own wells usable.

5. The amount of average outflow from the Lake com-

puted without reference to any extractions for the usage presently being made from the water of the Lake, whether for human consumption, irrigation, or other usages.

6. Evaporation records properly applicable to this Lake.

7. The feasibility and cost of a suitable sewage system and treatment plant for the properties intended to be served by Respondent, and the feasibility and cost of a suitable sewage and treatment plan for all of the improved properties surrounding Loon Lake.

The department urges the superior court exceeded its scope of review in remanding the matter to them for further investigation, and also, that the department is not required to investigate the breadth of factors ordered in the remand decree when considering an appropriation·application.

■ Standards for judicial review of administrative decisions in contested cases are presented in the Administrative Procedure Act, codified in RCW 34.04. The particular statutory provision relevant here permits affirmance of agency decisions or remanding of them for further proceedings. RCW 34.04.130(6).[1] A remand for additional evidence is proper, if needed, even where the administrative decision is not in error. *State ex rel. Gunstone v. State Highway Comm'n*, 72 Wn.2d 673, 434 P.2d 734 (1967). However, if a determination by the agency is to be reversed, it must be

---

[1] RCW 34.04.130(6). "The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(a) in violation of constitutional provisions; or

"(b) in excess of the statutory authority or jurisdiction of the agency; or

"(c) made upon unlawful procedure; or

"(d) affected by other error of law; or

"(e) *clearly erroneous* in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

"(f) *arbitrary or capricious*." (Italics ours.)

found to be either "clearly erroneous" or "arbitrary or capricious", RCW 34.04.130(6)(e) and (f).

 A finding can be held to be "clearly erroneous" if, despite supporting evidence, the reviewing court on the record can firmly conclude "a mistake has been committed." *Ancheta v. Daly*, 77 Wn.2d 255, 260, 461 P.2d 531 (1969). A finding can be held to be "arbitrary or capricious" if there is no support for it in the record and it is therefore a "willful and unreasoning action, in disregard of facts and circumstances." *Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n*, 69 Wn.2d 472, 479, 418 P.2d 735 (1966).

The department alleges the reviewing court's findings of fact Nos. 8 and 9 contradict without justification the department's fifth finding.[2] We agree only as to the court's finding of fact No. 8. We conclude that finding of fact No. 9, relating to a general "public interest" concern, does not contradict the agency's finding of fact No. 5, which covers a different concern—the impact of lake water withdrawal on the quality of the lake water.

 Department finding of fact No. 5 is supported by the testimony of health department experts from Spokane and Stevens Counties, and their testimony that the proposed withdrawal of the lake's water would have no effect on the lake's water quality was unimpeached. The court's review was made solely on the record, with no new testi-

---

[2]Superior court finding of fact No. 8, in part: "If Respondent's right to pump further water out of the Lake is granted, this will cause a greater inflow into the Lake from surrounding areas, thus carrying contamination."

Superior court finding of fact No. 9, in part: "Taking water from the Lake when there is already water available, from existing wells, when there is use of all of the water of Loon Lake for recreational purposes would threaten to be detrimental to the public interest . . ."

Department finding of fact No. 5: "The withdrawal of water, as described in Finding of Fact No. 3 would not significantly modify the quality of waters of Loon Lake if, indeed, any modification of the quality of said waters whatsoever results therefrom."

mony received, and there is no basis on which the trial court could conclude that the agency's finding was "arbitrary or capricious." The trial court's substitution of its judgment for that of the agency's, where there is no support in the record, is invalid. *Ancheta v. Daly, supra* at 260.

There is, as well, no basis by which a court would be left with "the definite and firm conviction that a mistake has been committed." *Ancheta v. Daly, supra* at 259-60. The uncontradicted testimony from the entire record is that the proposed withdrawal would not lower the lake more than $\frac{1}{2}$ inch. Agency finding of fact No. 5 cannot be said to be "clearly erroneous."

A pretrial order, entered pursuant to CR 16(b),[3] listed four contentions by the respondents. The order, when entered, controls the subsequent course of the action unless modified at trial to prevent manifest injustice. No such showing was made, and there was no modification of the order. The question of the right of littoral owners, existing or prospective, was not one of the contentions. Paragraphs 2 and 3 of the remand decree, seeking further department investigation on the present and future consumptive use of those persons with water rights on the lake, is improper as it is beyond the scope of the pretrial order.

At the time of the initiation of the application in 1967, the requirements governing the department's rulings upon such applications were contained in RCW 90.03.290, which is part of the original 1917 water code, unamended since 1947. The statute requires the department to make essentially four determinations prior to the issuance of a water use permit: (1) what water, if any, is available; (2) to what beneficial uses the water is to be applied; (3) will the appropriation impair existing rights; and (4) will the appropriation detrimentally affect the public welfare.

If the department determines there is no unappropriated

[3]CR 16(b). "The court shall make an order which . . . limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

water, or that if some exists it will not be applied to a beneficial use, or that the appropriation would impair existing rights or alternately or in addition be to the detriment of the public welfare "it shall be [the] duty of the supervisor to reject such application and to refuse to issue the permit asked for." RCW 90.03.290. These determinations are necessary, under the water code, even though deemed to be "tentative" and not adjudicative of existing rights. *Funk v. Bartholet*, 157 Wash. 584, 593-94, 289 P. 1018 (1930); *Mack v. Eldorado Water Dist.*, 56 Wn.2d 584, 587, 354 P.2d 917 (1960).

The record reveals evidence as to the amount of water in Loon Lake for each month from 1950 to the present, and the maximum amount of water necessary to satisfy the Loon Lake Park Company appropriation if granted ($\frac{1}{2}$ inch of lake water). Furthermore, the 1950 Stevens County Superior Court decision regarding the lake level did not fix a minimum level prohibiting further withdrawals, as contended by respondents and as seemingly found by the reviewing court in its memorandum opinion. Rather, that decision establishes a maximum level. That cause was initiated pursuant to RCW 90.24, a statute that provides avenues to persons to set or regulate water levels in order to control floods. RCW 90.24.010. The Stevens County decision is not relevant to any issue in the present case. The evidence amply establishes the availability of water.

Second, the use of water for domestic purposes is a beneficial use (RCW 43.27A.020 and RCW 90.54.020(1)) and the record reveals evidence of the department's determination it was for that beneficial purpose that the application was submitted.

Third, no evidence exists to contradict the department's determination that the lowering of Loon Lake by a maximum of $\frac{1}{2}$ inch would not impair the existing rights of riparian owners on the lake. *Botton v. State*, 69 Wn.2d 751, 420 P.2d 352 (1966). Paragraphs 5 and 6 of the remand decree, regarding outflow and evaporation from the lake

and seeking further department investigation, are stricken inasmuch as there is sufficient evidence in the record to satisfy the statutory criteria. The department's determinations as to the first three statutory criteria are valid.

██ The department contends that the statute's fourth requirement for determination—"detriment to the public welfare"—does not require examination of potential pollution resulting from the issuance of the appropriation permit and the appropriation. The department's reasoning is the 1917 water code's sole purpose was to provide a system for the distribution of state waters, and when the "public welfare" element is read in that context, the phrase relates to the withdrawal of water and not to pollution and health concerns. *State v. Lawrence,* 165 Wash. 508, 510, 6 P.2d 363 (1931). The department further asserts whatever pollution, sanitation, sewage or health difficulties may arise because of the water use permit issuance, there exist other departments with legislative authority to respond to the problems.

These contentions are no longer meritorious in light of the enactment of two significant and far-reaching statutes, the State Environmental Policy Act of 1971 (SEPA) (RCW 43.21C), and the Water Resources Act of 1971 (WRA) (RCW 90.54). These two statutes apply to this case and the department is obligated, under them, to consider the total environmental and ecological factors to the fullest in deciding major matters.

The mistreatment of the environment has long been a concern in many sectors of our society, but the enactments of SEPA and WRA, as well as their national counterparts, declare a legislative mandate of the ecological ethic. SEPA strongly declares our state environmental policy. RCW 43.21C.010, .020. It is a policy recognizing the necessary harmony between humans and the environment in order to prevent and eliminate damage to the environment and biosphere, as well as to promote the welfare of humans and the understanding of our ecological systems. To ensure that these values of ecological health become part of the deci-

sion-making process in our rapid, highly commercial and industrial society, SEPA requires various governmental branches and agencies to submit environmental impact statements before pursuing specified actions. RCW 43.21C.030(2)(c)(i). The environmental impact reports require a detailed statement by the responsible official on:

(i) the environmental impact of the proposed action;
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented;
(iii) alternatives to the proposed action;
(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented;

Environmental protection has thus become a mandate to every state and local agency and department. Consideration of environmental values is advanced under SEPA. In the preparation of impact statements, SEPA requires consultation with other agencies, the studied development of appropriate alternatives to proposed projects, and recognition of "the world-wide and long-range character of environmental problems." *See* RCW 43.21C.030(2)(d), (e) and (f). All of the foregoing shall "[u]tilize a systematic, interdisciplinary approach . . . in decision making which may have an impact on man's environment". RCW 43.21C.030(2)(a).

We recognize SEPA does not demand any particular substantive result in governmental decision making, for it indicates "other considerations of state policy" (RCW 43.21C.030(2)(a-g)) continue to be the responsibility of the agencies. "Environmental amenities" will undoubtedly often conflict with "economic and technical considerations." In essence, what SEPA requires, is that the "presently unquantified environmental amenities and values will be given appropriate consideration in decision making along with economic and technical considerations." RCW 43.21C.030(2)(b). It is an attempt by the people to shape their future environment by deliberation, not default.

There being no argument that the issuance of the water use permit in this case does not amount to a major action significantly affecting the quality of the environment (RCW 43.21C.030(2)(c)), the department is required to act in accordance with the provisions of SEPA in conducting its additional investigation under the remand decree.

The Water Resources Act of 1971 (WRA), though dealing with only one aspect of our environment, is as vigorous as SEPA in its policy declaration. The state water resource policy finds that the public health, preservation of natural resources and aesthetic values are deserving of promotion, in addition to the state's economic well-being. RCW 90.54.010.

RCW 90.54.020(3) requires that the quality of the natural environment "shall be protected" and, where possible, enhanced as follows:

(a) . . . Lakes and ponds shall be retained substantially in their natural condition. *Withdrawals of water* which would conflict therewith shall be authorized only in those situations where it is clear that overriding considerations of the public interest will be served.

(b) Waters of the state shall be of high quality. Regardless of the quality of the waters of the state, *all wastes and other materials and substances proposed for entry into said waters shall be provided with all known, available, and reasonable methods of treatment prior to entry.* . . . wastes and other materials and substances shall not be allowed to enter such waters which will reduce the existing quality thereof, except in those situations where it is clear that overriding considerations of the public interest will be served.

(Italics ours.) The department is therefore required, in accordance with the above cited and other relevant provisions of WRA, to evaluate the possible pollution reentry problems resulting from the domestic water use in the vicinity of the lake.

The appellant-department contends that SEPA and WRA may not be applied in this case because the application for the water use permit, its issuance, the contested hearing,

and the superior court review all occurred prior to August 9, 1971, the effective date of the acts. Although these events did transpire before the effective date of SEPA and WRA, the agency's action had not been finalized prior to the passage of the statutes and remains tentative even to this date. The statutes' application in this case cannot be deemed retroactive, although relating to some events occurring prior to the statutes' enactment.

In this case, notice of the application was made and the protests and appeals that resulted caused the permit to be stayed, pursuant to statute. This stay permitted judicial review. The judicial review, in turn, resulted in a remand decree ordering further departmental investigation before the permit could be validly issued. A remand which we affirm in part on this appeal. These facts indicate an investigation critical to the department's determination of whether or not to issue the permit is continuing. It is untenable to assert the permit's issuance was final and vested rights with Loon Lake Park Company, when deliberations as to the appropriateness of such an issuance are still to take place. On the contrary, the permit issuance was stayed, was not final and operative, and vested no rights. To conclude otherwise would "validate" a permit issuance though litigation is being pursued alleging its invalidity.

The matter is remanded to the department for further action in accordance with this decision.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, and WRIGHT, JJ., concur.