Honorable Tom Fitzsimmons Director, Department of Ecology 300 Desmond Drive P.O. Box 47600 Lacey, WA 98504-7600
Honorable Bruce Miyahara Secretary, Department of Health 1112 S.E. Quince Street P.O. Box 47890 Olympia, WA 98504-7890
Dear Director Fitzsimmons and Secretary Miyahara:
By letter previously acknowledged, you have requested our opinion on a series of questions we have paraphrased as follows:
1. Assume the following facts:
A property owner wishes to subdivide a tract of land formultiple-unit residential development. The development willrequire withdrawal of ground water to supply the planned housingwith an adequate supply of water for drinking and other domesticuse. To meet this requirement, the property owner plans to drillseveral wells. Each of the wells individually is expected to pumpless than 5000 gallons of water per day, but the total pumped byall the wells will exceed 5000 gallons per day.
1A. Given the factual pattern just described, is each well aseparate "withdrawal" of ground water exempt from the requirementto apply to the Department of Ecology for a permit under RCW90.44.050?
1B. If no permit is required for any individual well, may thewells be interconnected with one another or with other watersystems without obtaining a water rights permit?
2. May small systems which were created independently and atdifferent times interconnect without obtaining a water rightspermit or a change in place of use, assuming the originalwithdrawals of ground water were exempt from the permitrequirement?
3. RCW 90.44.050 provides that a use established under theexemption, to the extent that it is regularly used beneficially,". . . shall be entitled to a right equal to that established by apermit issued under the provisions of this chapter. . . ." Thesame section further provides that the party making the exemptwithdrawal has the option of obtaining permits and certificates inthe same manner as provided for non-exempt withdrawals.
3A. To be eligible for a water right, must an exempt withdrawalunder either circumstance described above meet the four-elementtest established in RCW 90.03.290 for obtaining a water right?
3B. Is the Department of Ecology required to issue a water rightcertificate to any party who requests it for rights obtainedthrough one or more exempt withdrawals?
3C. May a right to the use of water established through an exemptwithdrawal be transferred to a different place and/or a differentuse pursuant to RCW 90.03.380? If so, is the holder of the rightobligated to apply for the transfer in the same manner as would berequired for non-exempt withdrawals?
 INTRODUCTORY NOTE
Due to the number and complexity of your questions, we will summarize the answer to each group of questions separately, followed by an analysis explaining our reasoning; we will then proceed to the next group of questions.
1. Assume the following facts:
A property owner wishes to subdivide a tract of land formultiple-unit residential development. The development willrequire withdrawal of ground water to supply the planned housingwith an adequate supply of water for drinking and other domesticuse. To meet this requirement, the property owner plans to drillseveral wells. Each of the wells individually is expected to pumpless than 5000 gallons of water per day, but the total pumped byall the wells will exceed 5000 gallons per day.
1A. Given the factual pattern just described, is each well aseparate "withdrawal" of ground water exempt from the requirementto apply to the Department of Ecology for a permit under RCW90.44.050?
1B. If no permit is required for any individual well, may thewells be interconnected with one another or with other watersystems without obtaining a water rights permit?
 BRIEF ANSWER
A group of wells drilled by the same person or group at or about the same time in the same area for the same purpose or project should be considered a single "withdrawal" and would not be exempt from the permitting requirement contained in RCW 90.44.050 if the total amount withdrawn for domestic use exceeds 5000 gallons per day. This answer makes it unnecessary to address Question 1B.
 ANALYSIS
RCW 90.44.050 was originally enacted in 1945 when the Legislature, clarified the applicability of the Water Code to public ground water. Because so much of its language is key to our discussion, it is quoted here in full:
 After June 6, 1945, no withdrawal of public ground waters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the Department and a permit has been granted by it as herein provided: EXCEPT, HOWEVER, That any withdrawal of public ground waters for stock-watering purposes, or for the watering of a lawn or of a noncommercial garden not exceeding one-half acre in area, or for single or group domestic uses in an amount not exceeding five thousand gallons a day, or for an industrial purpose in an amount not exceeding five thousand gallons a day, is and shall be exempt from the provisions of this section, but, to the extent that it is regularly used beneficially, shall be entitled to a right equal to that established by a permit issued under the provisions of this chapter: PROVIDED, HOWEVER, That the department from time to time may require the person or agency making any such small withdrawal to furnish information as to the means for and the quantity of that withdrawal: PROVIDED, FURTHER, That at the option of the party making withdrawals of ground waters of the state not exceeding five thousand gallons per day, applications under this section or declarations under RCW 90.44.090 may be filed and permits and certificates obtained in the same manner and under the same requirements as is in this chapter provided in the case of withdrawals in excess of five thousand gallons a day.
RCW 90.44.050. (Emphasis added.)
The general pattern of this statute is to require permits to withdraw ground water before the withdrawal may occur. Certain "small withdrawals" are exempt from the permit requirement. Since your questions are about a hypothetical property owner who plans to drill several wells for domestic water supply for a new subdivision, the exemption underlined above is the key to our discussion:
 EXCEPT, HOWEVER, That any withdrawal of public ground waters . . . for single or group domestic uses in an amount not exceeding five thousand gallons a day . . . is and shall be exempt from the provisions of this section. . . .
Under the fact pattern you have asked about, a property owner contemplates drilling several wells for a housing subdivision. None of the individual wells is expected to pump more than five thousand gallons a day, but the sum of the water pumped by all the wells will exceed five thousand gallons a day.
Since the statute exempts "withdrawals" from the permitting requirement, the question becomes: does your hypothetical describe a series of "withdrawals," each exempt from the permitting requirement because each is within the 5000 gallons per day specified in the exemption language, or does it describe a single "withdrawal" which because of its size is outside the exemption and requires a permit before withdrawal?
For several related reasons, we conclude that the facts you have asked us to assume describe a single "withdrawal" of ground water which is not exempt from the permitting requirement. We note first the policy underlying the Water Code and the policy underlying the exemptions in RCW 90.44.050. The general policy of the Water Code was stated most succinctly in State v. Lawrence, 165 Wn. 508,6 P.2d 363 (1931):
 The water code clearly expresses the legislative purpose to provide a complete system of regulation for the distribution of the waters of the state, and thereby provide "an inexpensive and ready manner of settling all disputes concerning such matters." West Side Irrigating Co. v. Chase, 115 Wn. 146, 196 P. 666. . . .
State v. Lawrence, 165 Wn. 508, 510, 6 P.2d 363 (1931). See also
RCW 90.03.005 (state water policy) and RCW 90.44.020 (purpose of extending water code to ground water).
The "small withdrawal" exemptions enacted in 1945, and still in existence, have two evident and interrelated purposes: (1) to save the appropriator of a very small withdrawal the trouble and expense of applying for a permit where the effect of the withdrawal would be very slight; (2) to save the state the trouble and expense of processing applications for small withdrawals with little impact on the total water available. In other words, given that the general purpose of the water code was to provide a "complete system for the regulation and distribution of water" (Lawrence, supra) as well as to provide "an inexpensive and ready manner of settling all disputes" (Id.), the Legislature recognized that very small withdrawals were unlikely to have a significant impact on the water system or to affect the outcome of disputes, and thus could be safely exempted from the permit requirement. For domestic water uses, the Legislature set the limit of the exemption at five thousand gallons per day.
In the hypothetical example you have referred to us, a single property owner contemplates a single "project" of subdividing land for a housing development. Supplying a development of any size with domestic water will have a significant impact on any ground water system, and you have asked us to assume that the total withdrawal will exceed the statutory maximum of 5000 gallons per day. Given the purposes of the water code, we cannot conclude that the Legislature intended, in such case, to allow the property owner to escape the permitting requirement merely by slicing the water needs of the development into small pieces with each piece requiring only an "exempt" withdrawal. If the property owner drilled a single large well to supply the whole development, the withdrawal would clearly not be exempt. Applying the permit requirement should not turn on an artificial choice of drilling several holes in the ground rather than one, where the withdrawal is for a single purpose.
This view is consistent with the rule of statutory construction by which exemptions to a statute are narrowly construed, to give maximum effect to the policy underlying the general rule. Seee.g., Yakima v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 469,Yakima Fire Fighters Ass'n, 117 Wn.2d 655, 818 P.2d 1076 (1991), and State v. Wanrow, 88 Wn.2d 221, 559 P.2d 548 (1977). In this case, a broad reading of the "exemption" language in RCW 90.44.050
would significantly increase the size of the "exempt" sector of appropriated ground water and would encourage the drilling of multiple wells, without any hydrological basis for the practice, precisely to escape the permit application requirement. This would undercut the unity and integrity of the state's water system and could increase the complexity of any litigation or other dispute about the water in question.
If the exemption is read broadly, a significant amount of water might be withdrawn "outside" the regulated water system, undercutting the central purpose for enacting the water code. Accordingly, we conclude that where water is withdrawn by a property owner for a single housing development, within a reasonable short period of time, a single "withdrawal" occurs for purposes of applying RCW 90.44.050 and determining whether the withdrawal requires a water rights permit, no matter how many individual wells or other withdrawal mechanisms are employed.
Because we have concluded that a permit would be required for the initial withdrawal under the circumstances described, it is not necessary to address Question 1B.
2. May small systems which were created independently and atdifferent times interconnect without obtaining a water rightspermit or a change in place of use, assuming the originalwithdrawals of ground water were exempt from the permitrequirement?
 BRIEF ANSWER
There is no current statute allowing "intertie" or interconnection of exempt withdrawals with one another or with other withdrawals; to accomplish this, the exempt withdrawals would either have to receive permits or be "consolidated" first with a non-exempt water right pursuant to Laws of 1997, ch. 446, § 1.
 ANALYSIS
Interties of public water systems are recognized and governed by RCW 90.03.383 et seq., which was extensively discussed in AGO1996 No. 19. The statute is complex, and sets different rules for interties occurring before and after January 1, 1991. For simplicity, we will consider only interties occurring after that date. RCW 90.03.383(2)(a) provides that:
 "Interties" are interconnections between public water systems permitting exchange or delivery of water between those systems for other than emergency supply purposes, where such exchange or delivery is within established instantaneous and annual withdrawal rates specified in the systems' existing water right permits or certificates, or contained in claims filed pursuant to chapter 90.14 RCW, and which results in better management of public water supply consistent with existing rights and obligations. Interties include interconnections between public water systems permitting exchange or delivery of water to serve as primary or secondary sources of supply, but do not include development of new sources of supply to meet future demand.
RCW 90.03.383(2)(a). (Emphasis added.)
We note, first, that the intertie law applies to "public water systems." Id. The term "public water system" is defined in RCW70.119A.020(4):
 "Public water system" means any system, excluding a system serving only one single-family residence and a system with four or fewer connections all of which serve residences on the same farm, providing piped water for human consumption, including any collection, treatment, storage, or distribution facilities under control of the purveyor and used primarily in connection with the system. . . ."
However, when we quoted the intertie statute above, we underlined language indicating that it covered public water systems where ". . . such exchange or delivery is within established instantaneous and annual withdrawal rates specified in the system's existing water right permits or certificates, or contained in claims filed pursuant to chapter 90.14 RCW." A public water system created by an exempt withdrawal has no water right permit or certificate, because by definition it was created through the exemptions in RCW90.44.050.
While a small withdrawal might be the subject of a claim filed pursuant to chapter 90.14 RCW, such a claim, as to ground water, must relate to waters that ". . . have been applied to beneficial use continuously (with no period of nonuse exceeding five consecutive years) . . . in the case of ground water beginning not later than June 7, 1945. In other words, a water right which is the subject of a claim filed under chapter 90.14 RCW cannot be an "exempt" water right under RCW 90.44.050, which took effect on the day the claims procedure was cut off.
Since "exempt" withdrawals do not have permits or certificates, and cannot be the subject of a water right claim, they cannot be "intertied" pursuant to RCW 90.03.383. If application were made for such an intertie, Ecology could not determine the "instantaneous and annual withdrawal rates" for such a system, because these rates have never been established.
We can see two possible ways to bring exempt withdrawals into the water rights system so that they could be intertied. First, the owner of the exempt withdrawal could apply for a permit pursuant to the final proviso of RCW 90.44.050. The permit, once issued, could provide the basis for an intertie with another water system.
The 1997 Legislature has added another alternative. Laws of 1997, ch. 446, § 1 provides in part that:
 Upon the issuance by the department of an amendment of the appropriate permit or certificate of ground water right, the holder of a valid right to withdraw public ground waters may consolidate that right with a ground water right exempt from the permit requirement under RCW 90.44.050, without affecting the priority of either of the water rights being consolidated. . . .
Under this language, the holder of a permit or certificate can consolidate the permitted right with an exempt right by complying with certain conditions. If the consolidated right involves a public water system, it could then be intertied pursuant to RCW90.03.383.
Pursuant to the intertie statute, the intertie will require an application for an amendment to the place of use and perhaps analysis of related factors. If the amendment meets the standards in RCW 90.03.383 and RCW 90.44.100, Ecology will issue an amended permit or certificate which will cover the intertied system.
3. RCW 90.44.050 provides that a use established under theexemption, to the extent that it is regularly used beneficially,". . . shall be entitled to a right equal to that established by apermit issued under the provisions of this chapter. . . ." Thesame section further provides that the party making the exemptwithdrawal has the option of obtaining permits and certificates inthe same manner as provided for non-exempt withdrawals.
3A. To be eligible for a water right, must an exempt withdrawalunder either circumstance described above meet the four-elementtest established in RCW 90.03.290 for obtaining a water right?
3B. Is the Department of Ecology required to issue a water rightcertificate to any party who requests it for rights obtainedthrough one or more exempt withdrawals?
3C. May a right to the use of water established through an exemptwithdrawal be transferred to a different place and/or a differentuse pursuant to RCW 90.03.380? If so, is the holder of the rightobligated to apply for the transfer in the same manner as would berequired for non-exempt withdrawals?
 BRIEF ANSWER
Exempt withdrawals are entitled to water rights on the same basis as non-exempt withdrawals. If a property owner applies for a permit for an exempt withdrawal, the permitting process is governed by the same standards as other permits, including the four-part test contained in RCW 90.03.290. There is no current statutory basis for issuing a certificate to a party based on one or more exempt withdrawals, except where the party applies for a permit and satisfies the statutory requirements for a certificate. An exempt withdrawal is limited to the land to which the water was applied.
 ANALYSIS
RCW 90.44.050 provides where a party makes an exempt withdrawal of ground water, the withdrawal ". . . shall be entitled to a right equal to that established by a permit issued under the provisions of this chapter. . . ." In the same vein, the second (1947) proviso to the section authorizes parties making exempt withdrawals to apply for ". . . permits and certificates obtained in the same manner and under the same requirements. . . ." as would be applied to non-exempt withdrawals. RCW 90.44.060, in turn, directs Ecology to follow, among other statutes, RCW90.03.250 through RCW 90.03.340, in processing applications for ground water permits.
Given these statutes, we conclude that the clear intention of the Legislature was that exempt withdrawals could result in vested water rights to the same extent as non-exempt withdrawals, with the important exception that the former would not require a permit.
RCW 90.03.290 is a long section containing instructions to Ecology on processing water right permit applications. The key language for this discussion is the following sentence:
 . . . The department shall make and file as part of the record in the matter, written findings of fact concerning all things investigated, and if it shall find that there is water available for appropriation for a beneficial use, and the appropriation thereof as proposed in the application will not impair existing rights or be detrimental to the public welfare, it shall issue a permit stating the amount of water to which the applicant shall be entitled and the beneficial use or uses for to which it may be applied. . . ."
Id.
If a property owner applies for a permit for a small withdrawal, pursuant to the final proviso in RCW 90.44.050, Ecology is directed to apply the same standards as for any other permit, including the four-part test outlined above. The proviso states that under such circumstances, permits and certificates would be ". . . obtained in the same manner and under the same requirements as is in this chapter provided in the case of withdrawals in excess of five thousand gallons a day."
By contrast, if a property owner effects a withdrawal of ground water which meets the terms of the exemption from permitting, RCW90.44.050 entitles such a party, ". . . to the extent [the water] is regularly used beneficially", to a water right ". . . equal to that established by a permit. . . ." Since a permit itself does not constitute a water right, there is some ambiguity in this language. However, given the purpose of the exemption, we conclude that the Legislature intended that exempt withdrawals result in an actual water right to the extent of beneficial use.
Question 3B asks whether Ecology is obligated to issue a certificate to anyone who requests one based on evidence of an exempt withdrawal. There is no statutory procedure outlining either why or how this could be done.
Chapter 90.44 RCW contains two sections concerning certificates of water right. RCW 90.44.080 works together with other sections of the chapter, and directs Ecology to issue a certificate to the holder of a permit "[u]pon a showing to the department that construction has been completed in compliance with the terms of any permit issued under the provisions of this chapter. . . ." Since exempt withdrawals have never received a permit, RCW90.44.080 cannot be applied.
RCW 90.44.090 establishes a procedure for Ecology to issue certificates to persons claiming vested rights, and its procedure could be applied quite easily to the consideration of a vested right arising from an exempt withdrawal. However, RCW 90.44.090
applies only to vested rights perfected within three years after June 6, 1945, the effective date of the Ground Water Code. Thus, neither statute may sensibly be applied to an exempt withdrawal, nor could we discover any other basis or procedure for granting a certificate based on an exempt withdrawal.
The final part of Question 3 asks whether the rights derived from an exempt ground water withdrawal may be transferred to other land, or to a different point of diversion, or to a different purpose of use, pursuant to RCW 90.03.380. Although this statute is pertinent, ground water is also covered by RCW 90.44.100, which begins:
 After an application to, and upon the issuance by the department of an amendment to the appropriate permit or certificate of ground water right, the holder of a valid right to withdraw public ground waters may, without losing the holder's priority of right, construct wells or other means of withdrawal at a new location in substitution for or in addition to those at the original location, or the holder may change the manner of the place of use of the water. . . .
RCW 90.44.100. (Emphasis added.)
Given the underlined language, and consistent with our narrow interpretation of the nature of the water right deriving from an exempt withdrawal, we conclude that the change procedure for rights derived from exempt withdrawals.
Furthermore, we do not see how Ecology could meaningfully process a proposal to change the location or purpose of use of an exempt withdrawal as a "change" pursuant to RCW 90.03.380 and RCW90.44.100. Because the original withdrawal was exempt from permitting, there is no obvious way to prevent its continued use after the "change" is processed. The application would be better analyzed as for a new permit, with the existing withdrawal taken into account in establishing whether the new permit should be granted. If a permit is granted, the new water right could then perhaps be "consolidated" with the earlier exempt right, pursuant to Laws of 1997, ch. 446, as discussed earlier.
We trust this opinion will be of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
JAMES K. PHARRIS Sr. Assistant Attorney General